# Richmond.

NORFOLK & PORTSMOUTH BELT LINE RAILROAD CO. V. COMMON-
WEALTH.

| 103 | 289 |
| f106 | 64 |
| 106 | 267 |

December 1, 1904.

1. STATE CORPORATION COMMISSION—*Private Track Scales—Public Ser-vice Regulation—Fixing Rates.*—Placing cars on private track scales, in position to be weighed, by a railroad company engaged in handling cars along its route from the terminus of one railroad to the terminus of another, and to and from the various industries with which it has established switching connections is cognate to, and so intimately connected with, the public service involved in the carriage and delivery of freight by railroad companies to patrons along its route as to constitute a part of such service. The service is a public service within the meaning of the Constitution of this State, is subject to the superintending power of the State, and the State Corporation Commission has the power, under section 155 of the Constitution, to compel the performance by railroad companies of such services for customers having switching connections with their roads, and to fix the charges therefor.

2. STATE CORPORATION COMMISSION—*Private Track Scales on Railroads—Rates.*—The rate of twenty-five cents per car fixed by the State Corporation Commission upon railroad companies for each car, loaded or empty, placed in position to be weighed on companies' or shippers' individual track scales on sidings leading to industries along the line of such railroads, is a reasonable rate, and is fully sustained by the evidence.

Appeal from State Corporation Commission.

*Affirmed.*

The opinion states the case.

*Thomas H. Willcox,* for the appellant.

*Attorney-General Wm. A. Anderson* and *A. C. Braxton,* for the Commonwealth.

WHITTLE, J., delivered the opinion of the court.

This is an appeal from an order of the State Corporation Commission fixing the charge for placing cars in position to be weighed on consignees' or shippers' individual track scales, located on sidings leading to industries along the line of appellant's railroad, at twenty-five cents per car for each car, loaded or empty, so placed in position and weighed.

Appellant is a public service corporation, duly incorporated by the Legislature of Virginia, and authorized to acquire land and construct, maintain, and operate a railroad with one or more tracks, from any point on the line of the Norfolk & Carolina Railroad Company at or near Pinner's Point, to some point on the line of the Norfolk & Western Railway Company between the eastern and southern branches of Elizabeth river. The road is what is known as a switching line, and its business consists of handling cars along its route from the terminus of one railroad to the terminus of another, and to and from the various industries with which it has established switching connections. For this service it receives the uniform compensation of $1.50 for each loaded car hauled by it, without regard to the length of the haul, and nothing for empty cars.

The character of the service which is the subject of this investigation can be best illustrated by that rendered by the railroad company for the F. S. Royster Company, the owners of an extensive fertilizer manufacturing plant, whose property adjoins the belt line.

By agreement with the guano company, appellant, when its·

road was in course of construction, put in a number of sidings, with necessary switching facilities, connecting the company's buildings with the railroad. A track scale was installed on one of these sidings, for the purpose of weighing such of the cars consigned to the company as might be necessary in the proper conduct of their business. The railroad's part in the performance of that service is to switch the car to be weighed on the scale track, push it on the scale with its engine, and uncouple it. The sworn weighmaster of the guano company takes the weight of the car, which is then pushed off the scales by the next car to be weighed, and that process is repeated until all are weighed. When unloaded, the empty cars, by a reverse course, are in turn pulled on the scales and weighed, and the difference between the weights of the loaded and empty car gives the weight of its lading. The goods of the guano company are handled in carload lots, and about 6,000 cars are annually delivered by the railroad company upon their sidings.

Until about one year before the institution of these proceedings, in delivering cars consigned to customers, the railroad company imposed a charge of fifteen cents for each car placed on the scales, whether loaded or empty, which charge was afterwards increased to fifty cents per car. Whereupon complaints were made to the State Corporation Commission by shippers and consignees owning private sidings connected with the railroad, that the increased charge was unreasonable and unjust. The proceedings instituted by the Commission upon these complaints resulted in the order now under review, which, as remarked, reduced the rate from fifty cents to twenty-five cents per car.

To this ruling of the Commission, appellant assigns two grounds of error.

First. It is insisted that placing cars on private track scales in position to be weighed is a matter of private contract, in-

volving a non-public service, which the State Corporation Commission cannot require a railroad company to perform for customers having switching connections with the road; and therefore cannot fix the charges therefor; and

Second. That, even if the Commission has jurisdiction over the subject, the rate of compensation fixed by it is unreasonable and unjust.

The principle upon which the State assumes authority to control and regulate the affairs of railroads and other public service corporations rests largely upon the doctrine of *agency.* Such corporations are founded by the Legislature for public purposes, and are clothed with authority, subject to State regulation and control, to exercise important governmental functions. By their charters they are granted privileges which may not be exercised by private persons, whether individuals or corporations, but always with the reservation, express or implied, that such privileges are subject to reasonable governmental control. *Cal. v. Pac. R. R. Co,,* 127 U. S. 40, 8 Sup. Ct. 1073, 32 L. Ed. 150. This right of control is part of the police power of the State.

As was said by this court, in the *City of Petersburg* v. *Petersburg Aqueduct Co.,* 102 Va. 654, 47 S. E. 848. "Bearing in mind the distinction between public and private corporations in the matter of public control—that the former are regarded as instrumentalities of the State and liable to visitation and regulation, while the charters of the latter are contracts within the meaning of the contract clauses of the State and Federal Constitutions, the obligation of which, in the sense of those clauses, cannot be impaired, . . . nevertheless the police power of the State is a governmental function the exercise of which, neither the Legislature nor any subordinate agency thereof, upon which part of its authority may have been conferred, can alienate or surrender by grant, contract or other

delegation." *Richmond, &c. Co.* v. *Richmond,* 26 Gratt. 83; s. c. 96 U. S. 521, 24 L. Ed. 734; *Boston Beer Co.* v. *Massachusetts,* 97 U. S. 25, 24 L. Ed. 989; *Stone* v. *Mississippi,* 101 U. S. 814, 25 L. Ed. 1079; *Butchers' Union Slaughter-House, &c. Co.* v. *Crescent City Live-Stock Landing, &c. Co.,* 111 U. S. 746, 4 Sup. Ct. 652, 28 L. Ed. 585; *Powell* v. *Penna.,* 127 U. S. 678, 8 Sup. Ct. 992, 32 L. Ed. 253. . . . . It follows as a necessary consequence from the foregoing statement of the law, that there is an implied reservation of the police power of the State in every public charter granted by the Legislature."

Governmental powers are conferred upon the State primarily by the people, in trust, for the benefit of all of its citizens; and whether exercised by the government directly through its own officials, or indirectly through the agency of corporations chartered by the State, must be exercised impartially and without discrimination for the benefit of all the people. This is the basic principle upon which our government is founded, and the philosophy of the constitutional provision securing to every one the "equal protection of the law."

"A franchise is a right, privilege or power of public concern, which ought not to be exercised by private individuals at their will and pleasure, but should be reserved for public control and administration, either by the government directly, or by public agents, acting under such conditions and regulations as the government may impose in the public interest." *Cal.* v. *Pac. R. R. Co., supra.*

Railroads are public highways, and in this age of advanced civilization are as essential to the life of the State as ordinary roads and streets are to the existence of rural and urban communities. The very existence of public corporations, as well as their power to exact fares and freights, is derived from the State, and it cannot be deprived of its superintending power

over them. *Cherokee Nation* v. *Kansas R. R. Co.,* 135 U. S. 657, 10 Sup. Ct. 905, 34 L. Ed. 295; *L. & N. R. R. Co.* v. *Kentucky,* 161 U. S. 696, 16 Sup. Ct. 714, 40 L. Ed. 849; *Smythe* v. *Ames,* 169 U. S. 544, 18 Sup. Ct. 418, 42 L. Ed. 819; *Wis., &c. Co.* v. *Jackson,* 179 U. S. 297, 21 Sup. Ct. 115, 45 L. Ed. 194.

In *Lake Shore, &c. R. R. Co.* v. *Ohio,* 173 U. S. 302, 19 Sup. Ct. 465, 43 L. Ed. 702, it was said: "In the recent case of *Jones* v. *Brim,* 165 U. S. 180, 17 Sup. Ct. 282, 41 L. Ed. 677, it was adjudged that, embraced within the police power of the State was the establishment, maintenance and control of public highways there, and under such power reasonable regulations incident to the right to establish and maintain such highways could be established by the State."

In this Commonwealth, the State Corporation Commission, created by constitutional authority, is the instrumentality through which the State exercises its governmental powers for the regulation and control of public service corporations. For that purpose it has been clothed with legislative, judicial and executive powers. *Sub-section "b" of sec. 155 of the Constitution* declares that "the Commission shall have the power, and be charged with the duty, of supervising, regulating, and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses therein by such companies; and to that end the Commission shall from time to time prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations, and shall require them to establish and maintain all such public service facilities and conveniences, as may be reasonable and just, which said rates, charges, classifications, rules, regulations and requirements the Commission may from time to time alter and amend."

It is quite clear that the foregoing provision affords ample authority for the action of the Commission in this case, provided the service in question fairly falls within the category of a public service in the meaning of the Constitution.

It is settled law that the duties of a common carrier may arise out of usage as well as from statutory enactments, and when once established the obligation of such carriers to perform them is as binding in the one case as in the other.

In the case in judgment the evidence shows that it is the custom of appellant and other railroad companies, under similar conditions, to render the service which is the subject of this controversy for their customers, as an incident to the carriage and due delivery of their freight. In this connection it may be remarked that appellant does not deny that the service is necessary to the due delivery of goods consigned to its patrons, nor has it refused to render the service, but maintains that it is a non-public duty, neither compellable nor supervisable by the Corporation Commission. Nevertheless the railroad company assumes the absolute right to fix the amount of its compensation for the service, as in the case of rates for public service, without regard to the views or wishes of the party against whom the charge is made, and uncontrolled by the Corporation Commission.

With respect to the contention that the service is not enforcible by the Corporation Commission, the case of *Minneapolis, &c. Co.* v. *Minnesota,* 186 U. S. 257, 22 Sup. Ct. 900, 46 L. Ed. 1151, shows that though a service may not be enforcible as a duty, yet when voluntarily entered upon, it may be regulated, and the charges therefor prescribed by the railroad commission.

The circus car cases and the express car cases, and the like, afford illustrations of services which a common carrier, as such, is not required to perform; and common carriers are held to be private carriers with respect to such duties, and freight

which it is not their business to carry. In that class of cases the parties furnish their own cars, or retain the possession and control of the goods shipped; and the authorities, therefore, hold that it is competent for the carrier to limit his liability, and that the amount of his compensation is the legitimate subject of compact.

Chief Justice Waite, after refusing to enforce an alleged duty in the "express cases," on the ground that it was not the common law duty of the company to perform it, proceeds to show that it might, nevertheless, be imposed by statute; and that if so imposed the courts would then enforce it. He says: "The regulation of matters of this kind is *legislative* in its character and not judicial. To what extent it must come, if it comes at all, from Congress, and to what extent it may come from the States, are questions which we do not undertake to decide; but that it must come, when it does come, from *some source of legislative power*, we do not doubt. The Legislature may *impose* a duty and, when imposed, it will, if necessary, be *enforced* by the courts; but unless a duty has been created, either by usage or by contract, or by statute, the courts cannot be called on to give it effect." *Memphis, &c. R. Co. v. South-. ern Ex. Co.*, 117 U. S. 29, 6 Sup. Ct. 542, 29 L. Ed. 791.

The distinction, however, between that class of cases and this case seems obvious. The service here is not an independent service, but is merely ancillary to the public duty of delivering freight to consignees with whom the railroad company has established switching connections—an incident to the public service, not severable, and essential to the due performance of that service. The establishment and operation of track scales, such as are used by the Guano Company in this case, is a necessity of modern commerce, of which the service of the railroad company in that connection is an indispensable feature. The case is analogous to that of a common carrier of live stock, whose business of transporting the stock involves the incidental

duty of furnishing suitable and safe facilities for loading and unloading the animals, and for feeding and watering them while in transit. *N. & W. R. Co.* v. *Harman*, 91 Va. 601, 22 S. E. 490, 44 L. R. A. 289, 50 Am. St. 855; *C. & O. Ry. Co.* v. *Bank*, 92 Va. 495, 23 S. E. 935, 44 L. R. A. 449.

If the power of the Commission is limited merely to fixing the rate for carriage, and it is without authority so to regulate that service as to render it effective, it is obviously wholly inefficacious with respect to this large class of consignees and shippers.

Upon the first assignment of error, therefore, the court is of opinion that the service in question is cognate to and so intimately connected with the public service involved in the carriage and delivery of freight by the railroad company to patrons along its route as to constitute a part of such service, and, consequently, is subject to governmental control.

The court is further of opinion that the second assignment of error, that the rate fixed by the Corporation Commission for the service in question is too low, and the contention of appellee, on cross appeal, that said rate is too high, are both without merit.

The Virginia Constitution, section 156, sub-section "f," provides "that the action of the Commission appealed from shall be regarded as *prima facie* just, reasonable and correct." *N. N., &c. R. Co.* v. *Hampton, &c. R. Co.*, 102 Va. 847.

It has also been held that the commissioners are presumed to be experts in the matter of rates and charges, and that their findings are entitled to peculiar weight. *East Tenn., &c. Co.* v. *I. C. C.*, 99 Fed. 52, 39 C. C. A. 413.

But aside from these considerations, the evidence fully sustains the judgment of the Commission in that regard.

It follows that the order complained of is without error and must be affirmed.

*Affirmed.*