# Richmond.

COMMONWEALTH v. ATLANTIC COAST LINE RAILWAY CO.

November 22, 1906.

Absent, Buchanan, J.

1. STATE CORPORATION COMMISSION—*Judicial Functions—Passing on Con-stitutionality of Acts of Legislature.*—The State Corporation Commission, in determining the liability of a corporation for a fine or forfeiture imposed by a statute which it is required to enforce, acts judicially, and may declare the act imposing such fine or forfeiture unconstitutional.

2. CONSTITUTIONAL LAW—*Regulating Railroad Rates—Due Process—Equal Protection of Law.*—While the State may make reasonable regulations for the government of public service corporations, and to that end may fix a reasonable maximum rate for the transportation of passengers, it cannot arbitrarily fix a maximum passenger rate of two cents a mile on mileage books of five hundred miles or over and require the carrier always to keep the same on sale to all who apply therefor, and to redeem them at a later period than they have heretofore redeemed mileage books. Such legislation is class legislation, and it is not for the protection of all the people, but of the favored few. It discriminates in favor of the wholesale buyer, and also invades the right of the carrier to conduct and manage his own affairs. It denies to the carrier the equal protection of the laws, and deprives him of his property without due process of law, and so is unconstitutional.

Appeal from State Corporation Commission.

*Affirmed.*

The statute under which this litigation arose contains the following provisions:

"1. Be it enacted by the General Assembly of Virginia, That from and after this act shall take effect the power is conferred on the State Corporation Commission, and it is required, to fix.

and prescribe a schedule of rates for the transportation of passengers by all transportation companies or corporations, and until such rates are prescribed by the State Corporation Commission all transportation companies or corporations, operated by steam, shall at all times keep on sale at each and every station mileage books of five hundred miles and over, which books may contain such reasonable conditions and restrictions as may from time to time be approved by the State Corporation Commission.

"2. And until said rates are fixed and prescribed it shall be unlawful for any transportation company or corporation, operated by steam, to charge or collect a greater sum than two cents per mile on such mileage books, and such mileage books shall be good and valid for the use of any dependent household member of the family of the party to whom issued, dwelling under the same roof, within one year from the date of same: provided, however, the name of any person so entitled to use such book or books shall be furnished in writing by the purchaser at the time of purchase, and shall be inserted in such book or books.

"5. That the transportation company or corporation issuing such book or books shall redeem within eighteen months after the expiration of the time limit named in said book any unused portion of such book or books, deducting the regular rate for the portion used; and such redemption shall be made within fifteen days after presentation of such mileage book or books to any authorized agent of the issuing road or corporation."

*Attorney-General William A. Anderson,* for the Commonwealth.

*Wm. B. McIlwane,* for appellee.

CARDWELL, J., delivered the opinion of the Court.

This is an appeal from a judgment of the State Corporation

Commission denying the prayer of a petition filed on behalf of the Commonwealth by the Attorney-General against the Atlantic Coast Line Railroad Company, the object of which was to compel the defendant railroad company to comply with the act of the General Assembly, approved March 15, 1906, requiring all railroads operating in this State to keep on sale at all times mileage books of five hundred miles and over at a charge of not more than two cents a mile.

The State Corporation Commission has, in a written opinion made a part of the record, after stating how the case arose, set forth in a very satisfactory manner the reasons why the relief asked on behalf of the Commonwealth could not be granted, and we therefore adopt its opinion as a part of the opinion of this Court.

"The petition states that the regular maximum rate of the defendant company is three cents per mile. The company was summoned by the Commission to show cause why it should not be required to comply with the said statute, and have penalties imposed upon it for its failure to perform its public duty in this respect. In its defense the company alleges that the act in question is unconstitutional. Several grounds are assigned by the defendant upon which its assertion of the unconstitutionality of the law is based. The two main contentions are:

1. That the statute in question is in contravention of the provisions of the Fourteenth Amendment to the Constitution of the United States, in that it deprives the defendant of its property without due process of law, and without just compensation, and also denies to the defendant the equal protection of the laws.

2. That the General Assembly of the State, under the provisions of the organic law of the State, has no authority by legislation to prescribe or fix rates for transportation, but that authority to exercise the legislative functions of the State in that respect is conferred exclusively upon the State Corporation Commission.

"The learned Attorney-General, as the highest law officer of

the Commonwealth, urged upon the Commission that in this proceeding it was invested with all the powers, and had imposed upon it all the responsibility, of a court of record. He earnestly contended that the Commission not only had the judicial authority to pass upon these constitutional questions, but that it was its manifest duty to do so, in so far as it was necessary to reach a final conclusion. This position of the Attorney-General was not combatted by the learned counsel for the defendant company, but was conceded to be correct. Indeed it is no longer open to question. 'In this Commonwealth, the State Corporation Commission, created by constitutional authority, is the instrumentality through which the State exercises its governmental powers for the regulation and control of public service corporations. For these purposes, it has been clothed with legislative, judicial and executive powers,' was held by the Court of Appeals of this state in the case of *Norfolk & P. R. R. Co. v. Com.*, 103 Va. 289, 49 S. E. 39, which went up to that Court on appeal from the Commission. The Constitution of Virginia, in section 156c provides, as to the Commission, that 'In all matters pertaining to the public visitation, regulation or control of corporations, and within the jurisdiction of the Commission, it shall have the powers and authority of a court of record, etc.' This section gives the Commission, in the exercise of its judicial functions, authority to administer oaths, compel the attendance of witnesses, enter up and enforce its judgments, and confers upon it other ordinary attributes of a court of general jurisdiction. In all matters 'within the jurisdiction of the Commission,' says the Constitution, employing the word *jurisdiction* which is appropriately used with reference to a judicial tribunal as distinguished from legislative or administrative *authority*. The Commission, by section 156b, has conferred upon it the legislative authority to fix and prescribe rates and classifications, and to make regulations for transportation and transmission companies to the full extent to which that power exists in the State government. But in the exercise of

this legislative power it cannot make its rates effective or put its regulations into force until it has summoned the company or companies to be affected before it. This is done by a notice, which affords due process of law to the company. The hearing or investigation upon that notice gives to the final action of the Commission the force and effect of a judgment of a judicial tribunal.

"Passing upon the reasonableness of rates and classifications to be prescribed by it, and of regulations, orders and require- ments to be promulgated by it—in the exercise of its legislative authority—constitute the principal matters 'within the juris- diction' of the Commission (as a judicial tribunal) as outlined by the Constitution. The General Assembly has brought many additional matters within the jurisdiction of the Commission.

"In this proceeding the Attorney-General invokes the juris- diction of the Commission under sections 16 and 19 of the act approved April 15, 1903, and carried into the Code of 1904 as section 1313a. By that statute the Commission is author- ized to compel all corporations to perform any public duty or requirement, and to impose fines upon them for failing to do so. This brings within the judicial jurisdiction of the Commission the enforcement of all statutes imposing public duties upon public service corporations. The Commission cannot impose a fine upon a corporation without summoning the company before it, hearing what it has to say in its defense, and passing judg- ment thereon judicially—in other words, giving the company a fair trial as in any other court. To proceed otherwise under this statute would be repugnant to fundamental principles, and would make the statute itself in violation of the Constitution, both of the State and the United States. The jurisdiction of the Commission is further enlarged by clause 19 of section 1294b of the Code, being section 19, chapter II, of the act concerning public service corporations. The Commission is there given jurisdiction to entertain a petition filed before it complaining of violation of any of the provisions of that act.

'If the grievance complained of be established,' says the Legislature in this act, 'the State Corporation Commission, sitting as a court of record, shall have jurisdiction,' etc. The Commission awarded an injunction under this statute against the Virginia Passenger and Power Company, restraining it from increasing its rates by discontinuing transfers. See report of State Corporation Commission of 1904, Part I, page 94.

"The Commission having summoned the defendant company before it to show cause why a penalty should not be imposed upon it, the Commission must hear fairly and pass judicially upon any issues properly raised. It matters not that one of the issues is the unconstitutionality of the act which the Commission seeks to enforce. If the act is void, it is a just reason why the company cannot be compelled to comply with it, or be fined for violating it.

"In support of its argument, that the act in question here contravenes the Fourteenth Amendment of the Constitution of the United States, the company relies chiefly upon the authority of the case of *Railway Company* v. *Smith,* 173 U. S. 684, 43 L. Ed. 858, 19 Sup. Ct. 565. The Supreme Court of the United States, in that case, held unconstitutional a statute of Michigan requiring railroad companies to keep on sale one-thousand-mile books or tickets. The opinion, delivered by Mr. Justice Peckham, declares that legislation of this character violates the constitutional rights of the railroad companies to due process of law and the equal protection of the laws. The statute provided that the tickets might be required to be issued in the name of the purchaser and his wife and children; the ticket to be valid for two years, and the unused portion then to be redeemed. The court says: 'We cannot regard this exceptional legislation as the exercise of a lesser right which is included in the greater one to fix by statute maximum rates for railroad companies. The latter is a power to make a general rule applicable in all cases and without discrimination in favor of or against any individual. It is the power to declare a general law upon the sub-

ject of rates beyond which the company cannot go, but within which it is at liberty to conduct its work in such a manner as may seem to it best suited for its prosperity and success. This is a very different power from that exercised in the passage of this statute. The act is not a general law upon the subject of rates, establishing maximum rates which the company can in no case violate. The Legislature having established such maximum as a general law now assumes to interfere with the management of the company while conducting its affairs pursuant to and obeying the statute regulating rates and charges, and notwithstanding such rates, it assumes to provide for a discrimination, an exception in favor of those who may desire and are able to purchase tickets at what might be called wholesale rates—a discrimination which operates in favor of the wholesale buyer, leaving the others subject to the general rule. And it assumes to regulate the time in which the ticket purchased shall be valid, and to lengthen it to double the period the railroad company has ever before provided. It thus invades the general right of a company to conduct and manage its own affairs, and compels it to give the use of its property for less than the general rate to those who come within the provisions of the statute, and to that extent it would seem that the statute takes the property of the company without due process of law.'

"The learned judge reasons at length along the same lines. The opinion establishes that the State may prescribe a maximum scale of rates, but it cannot compel a railroad company to contract with any individual or class for carriage at a charge less than the established or regular scale of fares. The reasoning of the learned judge is not entirely and clearly convincing, nor is the conclusion reached by him very satisfactory, and three of the judges dissented. But we are bound by this decision, as it emanates from the highest tribunal in the country. The case has been referred to in several subsequent cases in the Supreme Court of the United States, without criticism or doubt cast upon it. It has also been followed in New York. In that

State a statute somewhat similar to the Michigan and Virginia statutes was assailed as unconstitutional in the case of *Beardsley* v. *N. Y., L. E. & W. Co.,* 162 N. Y. 230, 56 N. E. 488. The Court of Appeals of New York refers to the opinion of Justice Peckham on the Michigan statute, and is not disposed to agree with all of its reasoning. But the court, in a brief opinion, concludes that it is bound by this opinion of the Supreme Court of the United States on a question arising under the Federal Constitution, and held the New York statute to be unconstitutional.

"In referring to the case in 173 U. S., *supra,* the Attorney-General says in his written brief: 'I frankly concede that unless this case can be distinguished from the Michigan case; or unless it can be shown that this case is overruled by some other decision or decisions of the United States Supreme Court, the decision of the United States Supreme Court in the Michigan case must be considered as conclusive of this case, and the Churchman act must, in that event, be held to be unconstitutional.' It is sought to distinguish the Virginia statute from the Michigan statute by pointing out that in the latter law the right to purchase the mileage tickets seemed to be confined to married men, and that the law itself was a portion of a general statute by which the Legislature had fixed a maximum scale of passenger rates. These differences are incidental, and we do not think that they affect the reasoning by which the conclusion is reached by the Supreme Court of the United States.

"The court says: 'The Legislature has the power to secure to the public services of the corporation for reasonable compensation, so that the public shall be exempted from unreasonable exactions, and it has also the authority to pass such laws as shall tend to secure the safety, convenience, comfort and health of its patrons and of the public with regard to the railroad. But in all this we find it neither necessary nor appropriate, in order that the Legislature may exercise its full right over these corporations, to make such a regulation as this, which discriminates

against it and in favor of certain individuals, without any reasonable basis therefor, and which is not the fixing of maximum rates or the exercise of any such power.'

"We conclude that the statute before us is in conflict with the Constitution of the United States, and is therefore void, and we have no authority to punish the defendant company for failure to comply with its terms. We are greatly strengthened in this conclusion by a convincing opinion delivered several days ago upon this question by the learned judge of the Corporation Court of Staunton, in which he reaches a similar result.

"As the conclusion already reached forces us to take no further proceedings in this matter, and so disposes of the whole case, it is unnecessary for us to pass upon the other question raised by the defendant company. The entire law-making power of the people of Virginia is vested in their representatives constituting our General Assembly, subject only to such limitation as may be placed upon it by the Constitution of the State. Whether the provisions of the Constitution relative to the powers and authority of this Commission, and vesting in the Commission the legislative power to make rates, are so worded as to exclude the General Assembly from exercising its legislative power in that respect, is a question which it is needless for the Commission to pass upon, unless it is so presented as to render its adjudication absolutely essential to the decision of the case."

It will be observed that the Commission considered that the controlling question in the case is, whether or not the act of the General Assembly under review, and which we will for convenience refer to as the "Virginia Mileage Act," is violative of the provisions of the Fourteenth Amendment of the Constitution of the United States, by depriving the appellee company of its property or liberty without due process of law, or by depriving it of the equal protection of the laws. The learned Attorney-General concedes that the case of *Railway Company* v. *Smith, supra* (which we shall speak of for convenience as the "Michi-

gan Case"), must be considered as conclusive of this case, unless they can be distinguished, or it can be shown that the Michigan case is overruled by some other decision or decisions of the United States Supreme Court. Therefore there is but little for us to add to what has been said in the opinion of the State Corporation Commission, *supra*.

The leading case relied on for the Commonwealth is *Munn* v. *Illinois,* 94 U. S. 113, 24 L. Ed. 77, which announced the broad doctrine that a state government has the inherent right to regulate and control railroad companies and other public service corporations and to prescribe the rates and charges that they should be allowed to make. In that case the power of the Legislature of Illinois to fix by law the maximum of charges for storage of grain in warehouses in Chicago and other places in the state was the question at issue, and upon the ground that when private property is devoted to public regulation it was held that under the limitations upon the legislative power of the states, imposed by the Constitution of the United States, the Legislature of Illinois could fix by law the maximum of charges for the storage of grain in warehouses at Chicago and other places in the state. A lengthy dissenting opinion was filed by Mr. Justice Field, concurred in by Mr. Justice Strong, taking the ground that the ruling of the majority was subversive of the rights of private property theretofore believed to be protected by constitutional guarantees against legislative interference, and in conflict with the authorities cited in its support; and that the decision of the court gave unrestrained license to legislative will.

By subsequent decisions of the same court the doctrine laid down in *Munn* v. *Illinois* has been frequently and materially modified. *Railroad Commission Cases,* 116 U. S. 307, 29 L. Ed. 636, 6 Sup. Ct. 334, 338; *Chicago, Milwaukee & St. Paul R. Co.* v. *Minn.,* 134 U. S. 418, 33 L. Ed. 970, 10 Sup. Ct. 702; *Smyth* v. *Ames,* 169 U. S. 523, 42 L. Ed. 819, 18 Sup. Ct.

418; *San Diego L. Co.* v. *National City,* 174 U. S. 754, 43 L. Ed. 1154, 19 Sup. Ct. 804.

With the modifications engrafted upon the rule referred to the rule itself has been approved in a number of cases down to and including *Minneapolis & St. L. R. Co.* v. *Minn., &c.,* 186 U. S. 257, 46 L. Ed. 1155, 22 Sup. Ct. 900, and in those cases decided after the Michigan case we are unable to find anything that can be construed as overruling that case or discrediting it in any degree, the fact being that the case was referred to because the circumstances in those cases, on the one hand, and the Michigan case, on the other, were different, and therefore the language of the decisions different. In the cases modifying the doctrine of *Munn* v. *Illinois* the trend of judicial thought, it may be safely said, is more in harmony with the views expressed in the dissenting opinion of Mr. Justice Field than with the view of the case taken by the majority of the court.

The most important and pertinent modification to be considered in connection with the case under review appears in the *Railroad Commission Cases, supra,* where the opinion by Chief Justice Waite (who also wrote the opinion in *Munn* v. *Illinois*), after reviewing the ruling in *Munn* v. *Illinois,* says: "From what has thus been said it is not to be inferred that this power of limitation or regulation is itself without limit. This power to regulate is not a power to destroy, and limitation is not the equivalent of confiscation. Under pretense of regulating fares and freights the state cannot require a railroad corporation to carry persons or property without reward; neither can it do that which in law amounts to a taking of private property for public use without just compensation, or without due process of law."

In *Chicago, Milwaukee & St. Paul R. Co.* v. *Minn., supra,* the rule in *Munn* v. *Illinois* appears to have been approved by a majority of the court, and another very important modification of the rule engrafted thereon, to the effect that where a state created a commission and clothed that commission with authority

to prescribe rates and charges to be made by railroad companies, the power thus delegated to the commission should not be exercised arbitrarily without giving the railroad companies affected a day in court and opportunity to be heard, and to appear and show the effect of the schedule of rates and charges prescribed by the commission upon them, and that to do this was depriving them of their property without. due process of law, and depriving them of the equal protection of the laws.

The other important modifications of the rule are not relevant to the issue in this case, and were announced in a number of cases in which the rule was variously formulated, many of which are exhaustively reviewed by Mr. Justice Harlan in *Smyth* v. *Ames, supra,* where that learned judge states the doctrine, as established by the adjudications of the court, as follows:

"1. A railroad corporation is a person within the meaning of the Fourteenth Amendment, declaring that no state shall deprive any person of property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws. 2. A state enactment, or regulations made under the authority of a state enactment, establishing rates for the transportation of persons or property by railroads that will not admit of the carrier earning such compensation as under all the circumstances is just to it and to the public, would deprive such carrier of its property without due process of law and deny to it the equal protection of the laws, and would therefore be repugnant to the Fourteenth Amendment of the constitution of the United States. 3. While rates for the transportation of persons and property within the limits of a state are primarily for its determination, the question whether they are so unreasonably low as to deprive the carrier of its property without such compensation as the constitution secures, and therefore without due process of law, cannot be so conclusively determined by the Legislature of the state, or by regulations

adopted under its authority, that the matter may not become the subject of judicial inquiry."

We are wholly unable to perceive the antagonism claimed on behalf of the Commonwealth to exist between the cases we have mentioned and a number of others not necessary to be adverted to, recognizing the rule in *Munn* v. *Illinois,* with its modifications, and the principle announced in the Michigan case. The fact is that the last-named case refers to *Munn* v. *Illinois* and the cases modifying the rule announced therein, and recognizes the existence of the rule as modified; but, while recognizing the power of the Legislature to prescribe maximum charges which may be made by public service corporations, held that the Michigan mileage statute did not belong to that class of legislation enacted in the exercise of this admitted power, but was a taking of the property of the company without due process of law—legislation which is prohibited by the Fourteenth Amendment, and therefore violated the constitutional rights of railroad companies to due process of law, and the equal protection of the laws. It was contended in that case, as in the case here, that as the Legislature would have the power to reduce the maximum charges to the same rate at which the Michigan statute provided for the purchase of thousand-mile tickets, the railroad company could not be harmed nor its property taken without due process of law when the Legislature only reduced the rate in favor of a few citizens instead of all; but the opinion denied the right of the Legislature to make such an alteration, upon the ground that to do so might involve a reduction of rates to an amount insufficient to give the remuneration to which the railroad company was legally entitled under the decisions of the court.

It will be observed that while the Michigan statute required thousand-mile tickets to be sold by railroad companies for less than the ordinary rates of fare, for use by the purchaser and his wife and children, if named on the ticket, and made them valid for two years after the date of purchase, the Virginia

Mileage Act requires the companies at all times, day and night—at all stations, regular and flag—to keep on sale books of five hundred miles and over, and that "it shall be unlawful for any transportation company or corporation operated by steam to charge or collect a greater sum than two cents per mile on such mileage books, and such mileage books shall be good and valid for the use of any dependent household member of the family of the party to whom issued, dwelling under the same roof, within one year from the date of same." As it appears to us, the provisions of the two statutes are practically the same, and fall within the purview of the Michigan case, as the reasoning for holding the one violative of the provisions of the Fourteenth Amendment of the constitution of the United States applies as well to the other. As stated in the opinion of the State Corporation Commission, above, the incident that the Michigan statute had fixed a maximum scale of passenger rates is mentioned in the Michigan case, but the conclusion reached was in no way rested upon that incident. On the contrary, the opinion says: "The power of the Legislature to enact general laws regarding a company and its affairs does not include the power to compel it to make an exception in favor of some particular class in a community and to carry the members of that class at a less sum than it has the right to charge for those who are not fortunate enough to be members thereof. This is not a reasonable regulation." And again: "Regulations for maximum rates for present transportation of persons, or property, bear no resemblance to those which assume to provide for the purchase of tickets in quantities at a lower than the general rate, and to provide that they shall be good for years to come. This is not fixing the maximum rate, nor is it proper legislation. It is an illegal and unjustifiable interference with the rights of the company." Clearly the dominant idea running through the whole opinion is that this is class legislation, and is not for the equal benefit of the whole people; therefore the conclusion is irresistible that the

same judgment would have been rendered by the court had the Legislature of Michigan not fixed a maximum scale of passenger rates.

It is true that the Michigan case was decided by a divided court, as was the case of *Munn* v. *Illinois* and nearly all of the cases sanctioning the doctrine of that case, but instead of the Michigan case being discredited by any subsequent decision of the court, in *Wis. M. & P. R. Co.* v. *Jacobson,* 179 U. S. 288, 45 L. Ed. 194, 21 Sup. Ct. 115, in referring to the power of a state to regulate, etc., railroad companies, the Michigan case is cited as authority for the proposition of law that "while this power of regulation exists, it is also to be remembered that the Legislature cannot, under the guise of regulation, interfere with the proper protection of the business of railroad corporations in matters which do not fairly belong to the domain of reasonable regulation." And the court adds: "The distinction between this case and that of *Lake Shore & M. S. R. Co.* v. *Smith,* 173 U. S. 684, 43 L. Ed. 858, 19 Sup. Ct. 565, . . is very plain. There we held that the statute in question was not a reasonable regulation of the business of the company; that it was the exercise of a pure, bald and unmixed power of discrimination in favor of a few of the persons having occasion to travel on the road, permitting them to do so at less expense than others, provided they could buy a certain number of tickets at one time. It was not legislation for the safety, health or proper convenience of the public, but an arbitrary enactment in favor of the persons spoken of, who, in the legislative judgment, should be carried at a less expense than the other members of the community; and there was no reasonable ground upon which the legislation could be rested, unless the simple decision of the Legislature should be held to constitute such reason."

We have, then, in *Wis. M. & P. R. Co.* v. *Jacobson,* the court's own construction of its decision in *Railway Company* v. *Smith* (the Michigan case).

·In *Beardsley* v. *N. Y., L. E. & W. R. Co., supra,* holding a New York statute, similar to the Michigan and the Virginia mileage statutes, in conflict with the Fourteenth Amendment of the constitution of the United States, the opinion, while indicating that the court was not disposed to agree with all of its reasoning, says: "The Supreme Court of the United States, in *Railway Company* v. *Smith,* has practically foreclosed all discussion on the question of the constitutionality of statutes of the character of the one before us."

We fully recognize, as did the court in *Beardsley* v. *N. Y., &c., Co., supra,* that the decision in the Michigan case is conclusive upon us on the question of the constitutionality of the statute under consideration; and, therefore, the judgment of the State Corporation Commission complained of must be affirmed.

*Affirmed.*