PROVOSTY, J.
The defendant was prosecuted for violating Act No. 290 of the Acts of the General Assembly of this state for the 3rear 1910, commonly known as the “family mileage book law.” He was tried, convicted, and sentenced to pay a fine of $305, and to 30 days’ imprisonment, and in default of the payment of said fine to an additional imprisonment of six months. From said sentence, he prosecutes this appeal.
The statute on which this prosecution is based provides:
“That all members of- a family, consisting of father, mother, sons and daughters, shall be entitled to all benefits or privileges to mileage sold by railroads in this state, as though each member was the original purchaser; that each member of family, as described above, over fifteen (15) years of age, shall certify to ticket as now required of the purchaser, but either parent may certify for all members under fifteen (15) years of age,”
—and that any officer or employs of a railroad who shall refuse to comply with said provisions of the act shall be fined not more than $500 nor less than $50 for each offense, or be imprisoned for not more than 6 months nor less than 10 days, or suffer both such fine and imprisonment at the discretion of the court.
The defendant was charged by information with having violated said act on December 20, 1910, by “unlawfully, willfully, and knowingly” refusing “to accept as railroad fare for the son of John J. Robira, a child under 15 years of age, the mileage certificates in mileage book sold by the Morgan’s Louisiana & Texas Railroad to the aforesaid John J. Robira”; he, the said defendant, being at the time an employé of said railroad—
“charged with the duty of collecting fares for the aforesaid railroad, the said John J. Robira and ‘his son at the time being passengers on one of the trains operated by the said company.”
Before pleading to the merits, defendant filed the following motion to quash the said information, to wit:
“And now into court comes the said M. L. Bonneval, defendant in the above numbered and entitled cause, and, having heard the information filed against him herein read, moves the court to quash, annul, and set aside the said information on the ground that Act No. 290 of the Acts of the General Assembly of the state of Louisiana for the year 1910, approved July 7, 1910, under the authority of which the said information purports to have been drawn, is unconstitutional, null, and void and of no force and effect for this, to wit:
“Mover shows that he is employed by Morgan’s Louisiana & Texas Railroad & Steamship Company, in the capacity of train auditor, and was employed in said capacity by said company on the 20th day of December last past, as alleged in said information; that said Morgan’s Louisiana & Texas Railroad & Steamship Company is a corporation chartered by special Act No. 37 of the Acts of the General Assembly of this state for the year 1877, approved on the 8t'h day of March of said year; that said company is the owner of a main line, and branch lines, of railroad in this state; that said company is now, and was on December 20, 1910, and for many years prior thereto, engaged in connection with its connecting lines in the transportation of both interstate and intrastate passengers; that, in addition to the sale of trip tickets, the said company is now, and for many years has been, selling mileage books of 1,000 miles at the reduced price of $25 per book, under the special and express conditions, among others, that any such mileage book shall be good only for the transportation of t'he purchaser; that it shall be taken up and the price 'paid therefor forfeited if presented for passage by another; that the purchaser shall sign his name in the presence of the conductor on the back of the mileage strip detached each time said mileage book is presented for passage; that at the time of the purchase of said mileage book the purchaser shall agree to said conditions and shall affix his signature to said mileage book as evidence of said agreement; that said mileage book shall be good only for the time indicated in the contract and shall be void thereafter.
“Mover further shows that the mileage book mentioned in the said information as having been tendered by one John J. Robira as fare for t'he transportation of his minor son less than 15 years of age was sold, to the said John *905 J. Robira on the 35th day of November, 1910, under the terms and conditions above mentioned, and was therefore good only for the transportation of the said John J. Robira according to the special terms and conditions under which the sale thereof was made to said John J. Robira.
“Mover further shows that the said mileage book so sold to the said John J. Robira as aforesaid was good for his transportation to the extent of 1,000 miles either for intrastate trips in the states of Louisiana and Texas, or interstate trips between said states over the lines mentioned in said mileage book, a copy of which said mileage book and the contract embodied therein are hereto annexed and made part hereof for fuller explanation and greater certainty.
“Mover further shows that said Morgan’s Louisiana & Texas Railroad & Steamship Company has filed with the Interstate Commerce Commission a tariff showing the terms and conditions under which the said mileage books are sold and under which the said mileage book sold to the said John J. Robira as aforesaid was sold; that said tariff, a copy of which is hereto annexed and made part hereof for fuller explanation and greater certainty, was filed with said Interstate Commerce Commission pri- or to said 20th day of December, 1910, and was still in force and had not been recalled or withdrawn when on said date the said John J. Robira offered said mileage book sold to him as aforesaid, for the transportation of his minor son aforesaid; and that, at the time when the -sale of said mileage book was made as aforesaid to said John J. Robira, either the said tariff or a previous one containing the same provisions as to such mileage books and as to the terms and conditions upon which they were to be sold was on file with the Interstate Commerce Commission and in force and effect.
“Mover further shows that, both by act of the General Assembly and the rules of the Railroad Commission of the State of Louisiaria, the maximum rate for the transportation of passengers in this state by railroads has been fixed at three cents per mile; that said maximum rate was in effect when said Act No. 290 of the Acts of the General Assembly of this state was passed, when said mileage book was sold to said John J. Robira as aforesaid, and when said mileage book was tendered for the transportation of.the minor son of said John J. Robira as alleged in said information.
“Now, in view of the facts above detailed and set forth, mover shows that to enforce the provisions of said Act No. 290 of the General Assembly of the state of Louisiana for the year 1910, approved July 7, 1910, would create by law a favored class of passengers enjoying privileges not shared by the general public, would deprive railroad companies, and particularly said Morgan’s Louisiana & Texas Railroad & Steamship Company, of their freedom of contract, of their property without due process of law, and would deny to them the equal protection of the laws in violation of the fourteenth amendment of the Constitution of the United States and of article 2 of t'he Constitution of this state; that said act is further unconstitutional, illegal, null, and void, since to enforce it would run counter to the provisions of Act Cong. Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154], commonly known as the interstate commerce act, and particularly sections 1 and 6 of said act and the laws amendatory thereof [Act June 29, 1906, c. 3591, §§ 1, 2, 34 Stat. 584, 5S6 (U. S. Comp. St. Supp. 1909, pp. 1150, 1153)], which forbid railroad companies subject to its authority from departing from their filed and published tariffs under severe penalties.
“And mover further shows that said Act No. 290 of the General Assembly of the state of Louisiana for the year 1910, etc., is unconstitutional, null, and void for the further reason that such power as the state may possess to make reasonable and just rates, charges, and regulations to govern railroads has been withdrawn from the General Assembly and conferred on the ‘Railroad Commission of Louisiana’ by the Constitution of 1898 of this state, articles 283 et seq., and particularly article 284, and hence the General Assembly of this state was wholly without authority or power to pass said act.
“Mover further shows that to prosecute and condemn him under a statute which is unconstitutional, null, and void, as proposed in the information herein filed against him, would be to deprive him of liberty or property without due process of law in violation of the fourteenth amendment of the Constitution of the United States and of article 2 of the Constitution of this state.
“Wherefore, the premises, annexed documents, and affidavit considered, mover prays that the said information may be quashed, and that he be hence discharged, and for general relief.”
To this motion to quash, the district attorney on behalf of the state filed an answer admitting all the allegations of fact in said motion contained to be true and the documents thereto attached to be really and truly what they purported to be, but denying all the legal consequences alleged to flow from said facts and documents. The motion was argued, submitted, and overruled. A bill of exceptions was taken to the action of the court in overruling defendant’s motion to quash, and the trial was then proceeded with. The result has already been stated.
This appeal is founded upon the single bill of exceptions above referred to.
*907 The facts are few, simple, 'and admitted. They are: .
That defendant is an employé of Morgan’s Louisiana & Texas Railroad & Steamship Company in the capacity of train auditor; that he was employed in said capacity on December 20, 1910; that said railroad company is duly incorporated, owns a main line, and branch lines, of railroad in this state, is now, was on December 20, 1910, and for many years prior thereto, engaged in connection with its connecting lines in the transportation of both interstate and intrastate passengers; that, in addition to the sale of trip tickets, said company is now, and for many years has been, selling mileage books of 1,000 miles each at the reduced price of $25 per book, under the special and express conditions, among others, that any such mileage book shall be good only for the transportation of the purchaser ; that it shall be taken up and the price paid therefor forfeited if presented for. passage by another; that the purchaser shall sign his name in the presence of the conductor on the back of the mileage strip detached each time the mileage book is presented for passage; that, at the time of the purchase of such a book, the purchaser shall agree to said conditions and shall affix his signature to said mileage book as evidence of said agreement; and that said mileage book shall be good only for the time indicated in the contract and void thereafter.
That the mileage book mentioned in the information herein was sold to John J. Robira on November 15, 1910, under the terms and conditions aforesaid; that said .mileage book was good for. the transportation of said John J. Robira to the extent of 1,000 miles either for intrastate trips in the states of Louisiana and Texas, or interstate trips between said states over the lines mentioned in said mileage book.
That said company had filed with the Interstate Commerce Commission a tariff showing the terms ’and conditions under which said mileage books are sold and under which said mileage book so sold to said John J. Robira as aforesaid was sold, and said tariff was still in full force and effect, and had not been withdrawn or recalled at the time when the said John J. Robira offerred said mileage book for the transportation of his minor son as stated in the information herein.
That both by the acts of the General Assembly of this state and the rules and regulations of the Railroad Commission of the state of Louisiana, the maximum rate for the transportation of passengers, by railroads in this state, has been fixed at three cents per mile; that said maximum rate was in effect when said Act No. 290 of 1910 was passed, when said mileage book was sold to said John J. Robira as aforesaid, and when it was tendered for the transportation of his minor son as aforesaid.
There was attached to defendant’s motion the following documents which by agreement of counsel were brought up in the transcript in original form, to wit:
(1) Joint tariff filed by said company with the Interstate Commerce Commission showing the terms and conditions under which said company proposed to sell mileage books.
(2) Order of the Railroad Commission of Louisiana fixing maximum rates for the transportation of passengers in this state at three cents per mile.
(3) Copy of mileage book sold to John J. Robira and of the contract embodied therein.
In view of these facts, defendant contends that Act 290 of 1910 is unconstitutional, null, and void:
First. Because to enforce it would be (a) to create by law a favored class of passengers enjoying privileges not shared by the general public; would deprive railroad companies, and particularly said Morgan’s Louisiana & Texas' Railroad & Steamship Company, of their freedom to contract, of *909 their property without due process of law, and would deny to them the equal protection of the laws, in violation of the fourteenth amendment of the Oonstitution of the United States and of article 2 of the Constitution of this state; and (b) to run counter to the provisions of Act Cong. Feb. 4, 1887, c. 104, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), commonly known as the interstate commerce' act, and particularly sections 1 and 6 of said act and the laws amendatory thereof, which forbid railroad companies doing interstate business from departing from their filed and published tariffs under severe penalties.
Second. Because such power as the state possessed to prescribe reasonable and just rates, charges, and regulations for the government of railroads has been withdrawn from the General Assembly and conferred on the “Railroad Commission of Louisiana” by the Constitution of 1S98, articles 283 et seq.
[1] Only the first of these contentions need be considered. In the case of Lake Shore & Michigan Southern Railway Co. v. Smith, 173 U. S. 684, 19 Sup. Ct. 565, 43 L. Ed. 858, the Supreme Court of the United States had occasion to consider the same contention in connection with an act of the Legislature of the state of Michigan, which provided that “one thousand mile tickets shall be kept for sale at the principal ticket office of all railroad companies” in the state or carrying on business partly within and partly without the state, at a price not exceeding $20 in one part, and $25 in another part of the state; that such tickets may be made nontransferable, “but whenever required by the purchaser they shall be issued in the names of the purchaser, his wife and children, designating the names of each on such ticket”; and that such tickets shall be made valid for two years from date of purchase. The court sustained the contention, and held the act to be unconstitutional.
That decision has since been referred to with approval by the same high court which rendered it (Wisconsin, etc., R. R. v. Jacobson, 179 U. S. 297-301, 21 Sup. Ct. 115, 45 L. Ed. 194), and has been accepted by the highest court of the states of New York (Beardsley v. N. Y. & C. R. R. Co., 162 N. Y. 230, 56 N. E. 488), Virginia (Commonwealth ex rel. v. Atlantic Coast Line, 100 Va. 61, 55 S. E. 572, 7 L. R. A. [N. S.] 1086, 117 Am. St. Rep. 983), and North Dakota (State v. Great Northern Ry. Co., 17 N. D. 370, 116 N. W. 89), and an authoritative statement of the conclusion of the highest federal court in respect to legislation attempting to require the issuance of mileage tickets at reduced figures or to prescribe who shall be the beneficiaries thereof; and we have no hesitation whatever in giving the same acceptance to the decision.
[2] In general terms it was held in that decision that, while the state has the power to fix, within reasonable limits, maximum rates of charges for railroads, it cannot compel a discrimination in rates in favor of those who buy thousand-mile tickets, as this would be an unjustifiable interference with the railroad’s liberty of contract. The reasoning upon which that conclusion is founded need not be rehearsed here. Suffice it to say that it would seem to be absolutely unanswerable.
How entirely analogous that case and the one at bar are in their facts can hardly need to be pointed out. In both cases alike the Legislature seeks to dictate to the railroad on what terms it shall make contracts for reduced rates and with whom. In both cases a discrimination in favor of a particular class of ticket purchasers is sought to be made obligatory.
The judgment appealed from is set aside, and the defendant is ordered to be discharged without day.