## Richmond

## BLUE CROSS OF VIRGINIA AND BLUE SHIELD OF VIRGINIA V. COMMONWEALTH OF VIRGINIA AT THE RELATION OF THE STATE CORPORATION COMMISSION

November 23, 1977.

Record No. 771122.

Present: Carrico, Harrison, Cochran, Harman, Poff and Compton, JJ.

*Alexander H. Slaughter (William H. King, Sr.; Gilbert E. Schill, Jr.; Elizabeth M. Allen; Clinton W. Calhoun, III; McGuire, Woods & Battle,* on briefs), for appellants.

*Robert D. Perrow, Assistant Attorney General; Peter B. Smith (Anthony F. Troy, Attorney General; Henry M. Massie, Jr., Assistant Attorney General; Richard D. Rogers, Jr.,* on briefs), for appellee.

HARRISON, J., delivered the opinion of the Court.

The sole issue involved in this appeal is whether the State Corporation Commission has jurisdiction to decide the constitutionality of Code § 32-195.10:1, as amended in 1973. The Commission denies it has such jurisdiction, relying on Code § 32-195.20.

Section 32-195.10:1 concerns services of certain practitioners other than physicians to be covered and provides:

"No plan for furnishing prepaid medical and surgical, and similar or related services, or any of such services, shall fail or refuse, either directly or indirectly, to allow or to pay for such services, or any part thereof, rendered by any doctor of podiatry, doctor of chiropody, or optometrist, optician and psychologist duly licensed to practice in Virginia, to the holder of any contract or subscription contract issued under or pursuant to such plan if the services rendered (a) are services provided for by such contract or subscription contract and (b) are services which the doctor of podiatry, doctor of chiropody or optometrist, optician and psychologist is licensed to render in Virginia. (1966, c. 276; 1973, c. 428.)"

Section 32-195.8:3 provides that subscribers shall be advised in writing as to benefits and limitations thereon, and reads as follows:

"Any person, group of persons or nonstock corporations organized or operating a plan under the terms of this chapter shall, prior to and during the term of the subscription contract, fully, fairly, and currently advise the subscriber in writing as to the benefits available to the subscriber under the contract and all limitations thereon. (1972, c. 429.)"

Section 32-195.20 concerns controversies involving subscription contracts and provides:

"The Commission shall have no jurisdiction to adjudicate controversies growing out of subscription contracts; and a breach of contract shall not be deemed a violation of this chapter. (1956, c. 268.)"

At its 1973 session the General Assembly of Virginia amended Code § 32-195.10:1 by requiring the services rendered by optometrists, opticians and psychologists to be added to prepaid medical and surgical plans. The effect of this amendment was to order Blue Cross/Blue Shield to pay for the services of these practitioners. Appellants maintain that this statute violates their rights under both Federal and State Constitutions, and admit that they have never amended their contracts in the manner which the statute requires.

In April, 1977, the Attorney General of Virginia advised the Commissioner of Insurance of the Commission of the alleged noncompliance of Blue Cross/Blue Shield with the provisions of the statute, as amended, and requested an investigation. Subsequently, the Commission determined that it had erroneously and inadvertently approved certain subscription contract forms submitted by Blue Cross/Blue Shield which contained provisions contrary to the Code section in controversy. The Commission thereupon entered an order on April 22, 1977, directing Blue Cross/Blue Shield to show cause why the Commission should not declare void as a matter of law all provisions in Blue Cross/Blue Shield subscription contracts approved by the Bureau of Insurance which are contrary to § 32-195.10:1.

Appellants responded by filing a motion to dismiss the show cause order, alleging the unconstitutionality of the section. The Commission, after considering memoranda filed by appellants and the Attorney General, limited solely to that issue, decided that it was without jurisdiction or authority to determine the constitutionality of § 32-195.10:1. By its order of July 15, 1977, it declared void, and withdrew its approval of, those provisions in subscription contracts issued by Blue Cross/Blue Shield which are contrary to the provisions of § 32-195.10:1. It gave appellants 30 days in which to submit to the Commission for review an endorsement advising all holders of subscription contracts of their rights arising under the amended section. It further ordered that appellants, within 30 days after receiving approval of the endorsement, furnish a copy of such endorsement to holders of subscription contracts. Appellants assigned error and noted this appeal of right.

It is the position of Blue Cross/Blue Shield that the Commission, which possesses judicial as well as legislative and executive powers, has jurisdiction to pass upon the constitutionality of those statutes it is charged with enforcing. In support, it cites *Commonwealth* v. *Atlantic Coast Line Railroad Co.*, 106 Va. 61, 55 S.E. 572 (1906). There we held that the Commission, in determining a railroad company's liability for a fine or forfeiture imposed by statute, acts judicially and may declare the Act imposing such fine or forfeiture unconstitutional. We quoted extensively, and with approval,

from the opinion of the State Corporation Commission in that case, and as follows:

   " 'The learned Attorney-General, as the highest law officer of the Commonwealth, urged upon the Commission that in this proceeding it was invested with all the powers, and had imposed upon it all the responsibility, of a court of record. He earnestly contended that the Commission not only had the judicial authority to pass upon these constitutional questions, but that it was its manifest duty to do so, in so far as it was necessary to reach a final conclusion. This position of the Attorney-General was not combatted by the learned counsel for the defendant company, but was conceded to be correct. Indeed it is no longer open to question. "In this Commonwealth, the State Corporation Commission, created by constitutional authority, is the instrumentality through which the State exercises its governmental powers for the regulation and control of public service corporations. For these purposes, it has been clothed with legislative, judicial and executive powers," was held by the Court of Appeals of this state in the case of *Norfolk & P.R.R. Co.* v. *Com.*, 103 Va. 289, 49 S.E. 39, which went up to that Court on appeal from the Commission. . . .

               * * *

   " 'The Commission cannot impose a fine upon a corporation without summoning the company before it, hearing what it has to say in its defense, and passing judgment thereon judicially — in other words, giving the company a fair trial as in any other court. To proceed otherwise under this statute would be repugnant to fundamental principles, and would make the statute itself in violation of the Constitution both of the State and the United States. . . .' " 106 Va. at 63-64, 65, 55 S.E. at 573.

   We observe here that while the *Atlantic Coast Line* case was tried under the Constitution of 1902, the pertinent language quoted in the opinion is identical to that now found in Article IX, Section 2 of the Constitution of 1971. No change has been made in the essential structure and basic powers of the Commission.

   Blue Cross/Blue Shield maintain that the statute in question is unconstitutional and is therefore void and unenforceable. They

say that the action of the Commission, requiring their compliance without a hearing of their constitutional defense, offends the fundamental principles recognized by this Court.

The Commission argues that the reliance by appellants on *Atlantic Coast Line* as precedent is misplaced. It says the issue there involved only an effort by the General Assembly to require railroads to offer to the public a mileage book which would entitle a passenger to 500 miles or more of travel at a rate not to exceed two cents a mile. The Commission points out that the Code had specifically conferred upon it the duty to enforce rates and services of public service corporations, and that a part of its power to enforce rates was the authority to fine the company for disobedience of the Commission's order to issue the mileage books.

The Commission concedes that in certain cases it does have jurisdiction to pass upon the constitutionality of a statute. It says that before the Commission prescribes a particular service or rate, and before it enforces a rate or service prescribed by the General Assembly, or by the Commission in its legislative capacity, due process requires that the intended obligor be given an opportunity to object to the action of the Commission. It concedes that this obligation is clearly stated in *Atlantic Coast Line.*

However, the Commission argues that in the instant case it has not sought to "enforce" any act which is contended to be unconstitutional. It says that it has "merely required that Blue Cross/Blue Shield give notice pursuant to Code § 32-195.8:3, . . . and not . . . to acquiesce in its opposition to payment of benefits pursuant to Code § 32-195.10:1". The Commission says, "Expressed in the simplest language — the Commission is only enforcing § 32-195.8:3 of the Code."

█ The Commission is charged by statute, § 38.1-29, with the execution of all laws relative to insurance and insurance companies. The Commission has the power to inspect, supervise and regulate. It has the authority to grant and issue all licenses to transact insurance in this state. And it also has the power to refuse to license or to suspend or revoke the license of any licensee whenever it finds that an applicant or licensee has violated any law of this state. Code § 38.1-99(5). The Commission concedes, as indeed it must, that it has the statutory authority "to take punitive steps" against Blue

Cross/Blue Shield if its order "directing compliance with Code § 32-195.8:3" is ignored. Code § 32-195.18 provides that if a defendant violates any provision of the chapter of the Code which includes § 32-195.10:1, or any lawful order of the Commission issued under the chapter, it may, in addition to revoking any license issued by it to the defendant, impose a fine up to $1,000.

Therefore, had Blue Cross/Blue Shield ignored the Commission's order and refused to furnish to all their holders of subscription contracts a copy of a policy endorsement advising them of their rights arising under § 32-195.10:1, appellants could have been fined $1,000 and their license to do business in Virginia could have been revoked. It would be difficult to convince appellants, or to conclude, that, armed with the authority and the power it possessed, the Commission, in entering the show cause order, was not seeking to "enforce" the provisions of Code § 32-195.10:1.

■ We do not agree that the effect of § 32-195.20 is to deny the Commission jurisdiction to pass upon the constitutionality of the statute in issue in this case. The sole purpose of § 32-195.20 is to provide that a controversy between subscribers and Blue Cross/Blue Shield, or controversies growing out of the Blue Cross/Blue Shield subscription contracts, cannot be decided by the Commission but must be resolved, as are other civil controversies, in the courts throughout Virginia. We attach significance to the language found in § 32-195.20, reading "and a breach of contract shall not be deemed a violation of this chapter". Clearly the purpose of this provision was to assure that a mere controversy between Blue Cross/Blue Shield and a subscriber in which the subscriber alleges breach of contract, and which might be resolved adversely to Blue Cross/Blue Shield, would not result in a revocation of the license of Blue Cross/Blue Shield pursuant to Code § 32-195.18.

Although the Commission is denied jurisdiction to adjudicate controversies growing out of subscription contracts, this does not mean it is powerless to declare Code § 32-195.10:1 valid or invalid. Black's Law Dictionary 621 (4th ed. rev. 1968), defines "enforce" to mean "to put into execution; to cause to take effect; to make effective; . . . to compel obedience to". And that is what the Commission sought to do when it issued its show cause order on April 22, 1977, followed by its final order of July 15, 1977.

Whether rightly or wrongly, Blue Cross/Blue Shield had ignored the amendment to § 32-195.10:1, adopted by the 1973 General Assembly of Virginia. The Commission sought to put that amendment into execution, to cause it to take effect. It sought to compel Blue Cross/Blue Shield to obey the statute and, to that end, ordered Blue Cross/Blue Shield to submit for approval by the Commission a proposed endorsement or amendment of their subscription contracts and then to advise each subscriber of the amendment. This was done, notwithstanding the fact that Blue Cross/Blue Shield have consistently maintained that the statute is void and unenforceable, and that due process requires that they be given a hearing and the opportunity to show the invalidity of the legislation.

The Attorney General concedes in his brief that in a judicial proceeding the Commission has the responsibility of passing on all issues presented, including the constitutionality of a statute. He agrees with Blue Cross/Blue Shield that § 32-195.10:1 of the Code forms the basis of the Commission's July 15th order. He further agrees with the appellants that the sole purpose of Code § 32-195.20 is to remove from the Commission's jurisdiction individual contract claims, and that requiring adherence to § 32-195.10:1 will not involve the Commission in individual contract disputes between subscribers and Blue Cross/Blue Shield.

If the Code section in controversy is constitutional the obligation of Blue Cross/Blue Shield thereunder is clear and the rights of the subscribers are certain. Should the Commission be of opinion that the Act is constitutional, Blue Cross/Blue Shield can then be required to amend their subscription contracts accordingly and to furnish the holders thereof with a copy of an endorsement and to advise them of their rights thereunder. Should Blue Cross/Blue Shield then refuse to comply with the Commission's order, they would be subject to the penalties and sanctions provided for by statute. This is the procedure by which the Commission makes effective the amended statute, and is the manner in which it would compel obedience therewith. The Act of the General Assembly would thereby be "enforced" by the Commission. The adjudication of controversies which might thereafter arise out of the amended subscription contracts would be a matter for the civil courts.

■ We do not share the apprehension voiced by the Commission in its brief that the controversy before it was not a justiciable one, or that had it asserted jurisdiction there was no one present to represent the interests of the subscribers who are parties to the contract, or those of the psychologists, the optometrists or the opticians affected by the statute. Its fears should be allayed, in part, by the participation here of its own counsel and of the Attorney General, both in the role of adversaries to the position of Blue Cross/Blue Shield. But more specifically the General Assembly created in the Office of the Attorney General a Division of Consumer Counsel to represent the interests of the people as consumers. Among the duties of the Division is to appear before the Commission, "to represent and be heard on behalf of consumers' interests, and investigate such matters relating to such appearance". Code § 2.1-133.1. It is appropriate to observe here that it was a letter from the Attorney General to the Commission which precipitated the instant proceeding by the Commission against Blue Cross/Blue Shield.

Further, there are provisions in Title 12.1 of the Code of Virginia which give the Commission authority to appoint all necessary regular and special counsel; which assure that all proper parties to any controversy before the Commission be convened; and which provide that before promulgating any general order, rule or regulation, the Commission shall give reasonable notice to afford interested persons having objection an opportunity to be heard. Code § 12.1-39 gives the "Commonwealth, any party in interest, or any party aggrieved by any final finding, decision settling the substantive law, order, or judgment of the Commission" an appeal of right to this Court.

Rule 5:18(b) of Court expressly makes the Commission, the Attorney General, the applicant or petitioner, every person who filed a notice of protest with the Commission and every person who made an appearance in person or by counsel at any hearing in any proceeding before the Commission, parties on appeal to such proceeding. It can be said that both the rules of this Court and of the Commission are liberally applied and construed to the end that all parties having an interest in any matter in controversy before the Commission be permitted to intervene and to appeal.

■ The Attorney General further argues that notwithstanding his conclusion that the Commission erred in not considering appellants' constitutional objections to Code § 32-195.10:1, prior to entering its July 15th order, this Court should decide the issue and hold the section constitutional. We disagree. Except in rare instances we only consider appeals from final orders of courts of record, the State Corporation Commission and the Industrial Commission of Virginia. Further, the constitutionality of the Code section involved is not an issue in this appeal, and has not been argued or briefed by the parties. Blue Cross/Blue Shield have not had their "day in court" on that issue before the Commission, a body which we hold has the authority to, and should, pass upon the constitutionality of the statute in controversy.

Accordingly, the order of the State Corporation Commission is reversed, and this case is remanded for such further proceedings as may be indicated consistent with the views expressed in this opinion.

*Reversed and remanded.*