## ST. LOUIS-S. F. R. CO. v. STATE et al.

No. 11922—Opinion Filed April 19, 1921.

Rehearing Denied May 17, 1921.

(Syllabus.)

1. Railroads—"Switching Service"— Hauls from Quarry to Cement Plant.

When a cement company having its plant located five or six miles from its quarry, where it obtains its rock and shale used in the manufacture of cement, contracts with a railroad company to transport its rock and shale from the quarry to the plant, the rock and shale being loaded into the cars by the cement company's employes, and the railroad company by its employes attaches its engine to said cars, connects them up, hauls the loaded cars to the cement plant, and returns the empty cars to the quarry; this constitutes a switching service, and not a road haul, notwithstanding the railroad company may use approximately five miles of its main line of road in transporting such cars from the quarry to the plant and returning the empties to the quarry.

2. Same.

Where a railroad company has transported crushed rock and shale from the quarry belonging to a cement company to its cement plant for a period of approximately ten years and handled it as a switching service, the fact that the railroad company attaches a caboose to the string of cars or puts a road engine on to perform this service or puts on a full train crew such as would be used in the regular road service and issues regular bills of lading for each car of rock or shale so transported, does not change the service from a switching service to a road haul.

3. Same—Rates—Reasonableness.

A careful examination of the evidence establishes that the service rendered in this case was a switching service; that the rate heretofore charged by the railroad company was exorbitant and excessive.

4. Corporation Commission — Jurisdiction and Powers.

The State Corporation Commission is established and its powers are defined by the Constitution of the state. Among its duties, it exercises the authority of the state to supervise, regulate, and control public service corporations, and to that end it has been clothed with legislative, judicial, and executive powers.

5. Same—Appeals—Supreme Court Jurisdiction—Judgment.

An appeal may be taken by the corporation whose rates are affected or by any person or corporation deeming themselves aggrieved by such action, and such appeal shall be of right and shall be taken to and reviewed by the Supreme Court only. The jurisdiction of the Supreme Court on such appeal is to consider and determine the reasonableness and justness of the action of the commission appealed from or any other matter arising under such appeal. The order of the commission or rate fixed by it shall be regarded as prima facie just, reasonable, and correct; if in the opinion of the court the evidence taken before the Corporation Commission and certified to the court overcomes this prima facie presumption, it is then the duty of this court to make such order or fix

such rate as it deems just, reasonable, and correct.

### 6. Same—Procedure—Necessity for Cross-Appeal.

When an appeal is taken from an order of the Corporation Commission fixing a rate to be charged by a public service transportation or transmission company to this court, it is tried by this court de novo upon the record and evidence introduced before the Corporation Commission and certified to this court. Upon a full consideration of the record, the order made by the commission and the evidence introduced, it is the duty of this court to judicially determine and fix such rate as it considers just, reasonable, and correct, irrespective of who appeals. In such case it is not necessary to take a cross-appeal.

### 7. Railroads—Rates for Switching Service for Cement Plant—Reasonableness.

On an examination of the record, the order of the commission and the evidence, we think the evidence overcomes the prima facie presumption in favor of the order of the commission; that the rate fixed by the Corporation Commission is too high; that 16.875 cents per ton, when loaded in cars furnished by the railroad company, is a fair and reasonable rate and charge for the transportation of the crushed rock and shale from the quarries of the Oklahoma Portland Cement Company at Lawrence to its mill at Ada, minimum carload to be marked capacity of car.

### 8. Same—Jurisdiction of Corporation Commission.

The record examined, and held, that the Corporation Commission had jurisdiction and authority to hear and determine this proceeding and decide what was a reasonable rate to be charged for the service rendered.

Appeal from the Corporation Commission.

Proceeding by the Oklahoma Portland Cement Company against St. Louis-San Francisco Railway Company. From the order rendered, defendant appeals. Affirmed in part, and reversed in part.

W. F. Evans and Kleinschmidt & Grant, for appellant.

S. P. Freeling, Atty. Gen., and R. E. Wood, Asst. Atty. Gen., for the State.

Henshaw & Hough and J. F. McKeel, for appellee Oklahoma Portland Cement Company.

MILLER, J. A complaint was filed by the Oklahoma Portland Cement Company, a corporation, against the St. Louis-San Francisco Railway Company before the Corporation Commission, asking that the Corporation Commission adjust and fix a rate to be charged by the defendant railroad company for transporting crushed stone and shale from its quarries to its mill at Ada, the distance being approximately 5.5 miles. A hearing was had before the Corporation Commission. It adjusted and fixed the rate at 20 cents per ton on a basis of 50 tons to the car, minimum car rate of $10 per car. The railroad company appealed from the ruling of the Corporation Commission.

The railroad company makes seven assignments of error. The assignments from 1 to 5, inclusive, are discussed by the railroad company under three separate subdivisions, but in substance are: The order is unreasonable, unjust, discriminatory, is not supported by the evidence, and the Corporation Commission erred in finding that the service rendered was a switching service instead of a road haul. All of these questions go to the sufficiency and weight of the evidence. We will, therefore, consider all the questions together in determining the sufficiency of the evidence.

The undisputed evidence is that the Oklahoma Portland Cement Company made a contract with the railroad company on October 5, 1906, whereby the railroad company was to handle the cars of crushed stone and shale, transporting them from its quarries at Lawrence, Oklahoma, to its mill at Ada, Oklahoma, at the price of eight cents per ton of 2,000 pounds of limestone or shale when loaded in cars furnished by the cement company, and at ten cents per ton of 2,000 pounds of limestone or shale when loaded in cars furnished by the railroad company, minimum weight in either case to be marked capacity of car. This contract was to continue in force for a period of 20 years. The capacity of the cars in use is 50 tons, and this would make a minimum price of $4 per car, if the cars were furnished by the cement company, and $5 per car, if furnished by the railroad company.

It is conceded by the cement company that this contract cannot now be enforced for the reason that the Corporation Commission has a right to fix the rate. The contract was introduced in evidence and was admissible for the purpose of showing what the railroad company at the time of making the contract considered a fair and reasonable rate. It was upon the strength of this contract that the cement company erected its plant at Ada, a distance of approximately 5.5 miles from its quarries.

The undisputed evidence further shows that the railroad company handled these cars as a switching service, and not as a road haul; that it was so handled as a switching service for many years thereafter and until a federal order known as general order No. 25 was issued in June, 1918, which

provided for a minimum charge of $15 per car on line hauls. After this federal order was issued, the railroad company put on this service a road engine, caboose, and a full ~~ew of men. Then it issued waybills for each car of crushed rock or shale and called it a line haul or road haul and charged the $15 per car instead of $5 per car. Prior to that time waybills had not been issued, but simply a ticket referred to as a conductor's switching ticket.

The evidence further discloses that this engine handled some other switching, although the railroad company studiously tried to make it appear that it did not.

Evidence was introduced to show what rates were charged other plants where stone, crushed stone, rock cement, gypsum rock, and other like materials were hauled by the railroad companies rendering a similar service, which rates are as follows:

Independence, Kansas, 10c per ton; minimum $5 per car; distance not given.

Kansas City to Sugar Creek, 11 miles; to Cement City, 13 miles; 20c per ton.

Chanute, Kansas; 10c per ton; minimum $5 per car; distance not given.

Ealham, Iowa, to Des Moines, Iowa, 20c per ton; new rate since August, 1918, 25c; distance 24.8 miles.

Fort Bellefontaine to Prospect Hill, Mo., $4 per car furnished by shipper; 25c per ton in carrier's equipment; distance 8 miles, congested St. Louis district.

Prospect Hill to St. Louis, $5 per car; distance 7.8 miles.

From pit 6 miles east of Watonga to Okeene, Oklahoma, 2c per 100 lbs.; distance not given.

Glencoe Lime and Cement quarries to kilns on Mo. Pac. R. R. 60,000 capacity, $8 per car; 80,000 capacity, $10 per car; distance not given.

Mankato, Minn., $6.50 per car; distance 3½ miles.

Mincke, Mo., to Valley Park, 50c per ton; distance not given.

Fort Smith, Arkansas, to Whitteville, Oklahoma, 3½c per 100 lbs.; 2-line haul; 32½ miles.

Muskogee to Spaulding Spur, $5 per car; distance not given.

This evidence was admissible for the purpose of showing what would be a just and reasonable charge for such service. The evidence further discloses that most of this rock and shale was used in the plant of the Oklahoma Portland Cement Company at Ada in the manufacture of cement; that the ce-

ment as a finished product was thereafter shipped out to various points in Oklahoma and elsewhere.

Under the evidence introduced it is clear that the service rendered by the railroad company was a switching service; that it was not in any sense a line haul or road haul. The act of the railroad company in 1918 of putting on a caboose and a train crew did not convert it from a switching service to a road haul. This act on the part of the railroad company to make it appear to be a road haul in order that the railroad company, under the federal order above referred to, could charge the cement company $15 per car for the service it had been rendering at $5 per car and in disregard of the contract it had made in 1906, was, to say the least, not commendable.

The cement company practically admitted that the railroad company would be entitled to a rate of 16.875c (sixteen cents and eight and three-quarter mills) per ton, and ask that the rate be fixed at this amount. In view of all the evidence introduced in this case, we think the contentions of the cement company are well founded; that sixteen cents and eight and three-quarter mills per ton would be a reasonable rate for the service rendered by the railroad company. Other railroads are rendering a similar service for less compensation. It is the duty of this court, upon appeal, to fix a reasonable rate. Sections 20, 22, and 23 of art. 9, of the Constitution of Oklahoma provide in part as follows:

"Section 20. From any action of the commission prescribing rates, charges, or classifications of traffic, or affecting the train schedule of any transportation company, or requiring additional facilities, conveniences, or public service of any transportation or transmission company, or refusing to approve a suspending bond, or requiring additional security thereon or an increase thereof, as hereinafter provided for, an appeal (subject to such reasonable limitations as to time, regulations as to procedure and provisions as to cost, as may be prescribed by law) may be taken by the corporation whose rates, charges, or classifications of traffic, schedule, facilities, conveniences, or service, are affected, or by any person deeming himself aggrieved by such action, or (if allowed by law) by the state. Until otherwise provided by law, such appeal shall be taken in the manner in which appeals may be taken to the Supreme Court from the district courts, except that such an appeal shall be of right and the Supreme Court may provide by rule for proceedings in the matter of appeals in any particular in which the existing rules of law are inapplicable. If such appeal be taken by the corporation whose rates, charges, or classifications of traffic,

schedules, facilities, conveniences, or service are affected, the state shall be made the appellee; but, in the other cases mentioned, the corporation so affected shall be made the appellee. The Legislature may also, by general laws, provide for appeals from any other action of the commission, by the state, or by any person interested, irrespective of the amount involved. All appeals from the commission shall be to the Supreme Court only, and in all appeals to which the state is a party, it shall be represented by the Attorney General or his legally appointed representative. * * *"

"Section 22. In no case of appeal from the commission, shall any new or additional evidence be introduced in the Supreme Court; but the chairman of the commission, under the seal of the commission, shall certify to the Supreme Court all the facts upon which the action appealed from was based and which may be essential for the proper decision of the appeal, together with such of the evidence introduced before, or considered by, the commission as may be selected, specified, and required to be certified, by any party in interest, as well as such other evidence, so introduced or considered as the commission may deem proper to certify. The commission shall, whenever an appeal is taken therefrom, file with the record of the case, and as a part thereof. a written statement of the reasons upon which the action appealed from was based, and such statement shall be read and considered by the Supreme Court, upon disposing of the appeal. The Supreme Court shall have jurisdiction, on such appeal. to consider and determine the reasonableness and justness of the action of the commission appealed from, as well as any other matter arising under such appeal; Provided, however, that the action of the commission appealed from shall be regarded as prima facie just, reasonable, and correct; but the court may, when it deems necessary, in the interest of justice, remand to the commission any case pending on appeal, and require the same to be further investigated by the commission, and reported upon to the court (together with a certificate of such additional evidence as may be tendered before the commission by any party in interest), before the appeal is finally decided."

"Section 23. Whenever the court, upon appeal, shall reverse an order of the commission affecting the rates, charges, or the classifications of traffic of any transportation or transmission company, it shall, at the same time. substitute therefor such orders as, in its opinion, the commission should have made at the time of entering the order appealed from; otherwise the reversal order shall not be valid. Such substituted order shall have the same force and effect (and none other) as if it had been entered by the commission at the time the original order appealed from was entered. * * *"

Oklahoma adopted that part of its Constitution pertaining to the Corporation Commission from the Constitution of Virginia. Construing the Virginia Constitution, in the case of Prentis v. Atlantic Coast Line Co. et al., 211 U. S. 210, 53 L. Ed. 150, Holmes, J., said:

"The State Corporation Commission is established and its powers are defined at length by the Constitution of the state. There is no need to rehearse the provisions that give it dignity and importance or that add judicial to its other functions, because we shall assume that, for some purposes, it is a court within the meaning of Rev. Stat. sec. 720, and in the commonly accepted sense of that word. Among its duties it exercises the authority of the state to supervise, regulate, and control public service corporations, and to that end, as is said by the Supreme Court of Virginia, and repeated by counsel at the bar, it has been clothed with legislative, judicial, and executive powers. Norfolk & P. Belt Line R. Co. v. Com., 103 Va. 289, 294, 49 S. E. 39."

See the following cases; Dreyer v. Illinois, 187 U. S. 71, 83, 84, 47 L. Ed. 79, 85, 23 Sup. Ct. Rep. 28; Winchester & S. R. Co. v. Com., 106 Va. 264, 268, 55 S. E. 692; Com. v. Atlantic Coast Line R. Co., 106 Va. 61, 64, 7 L. R. A. (N. S.) 1086, 117 Am. St. Rep. 983, 55 S. E. 572; Winchester & S. R. Co. v. Com., 106 Va. 264, 281, 55 S. E. 692; Interstate Commerce Commission v. Cincinnati, N. O. & T. P. R. Co., 167 U. S. 479, 499, 500, 505, 42 L. Ed. 243, 253, 255, 17 Sup. Ct. Rep. 896; San Diego Land & Town Co. v. Jasper, 189 U. S. 439, 440, 47 L. Ed. 892, 893, 23 Sup. Ct. Rep. 571; Southern R. Co. v. Greensboro Ice & Coal Co., 134 Fed. 82, 94, affirmed in 202 U. S. 543, 50 L. Ed. 1142, 26 Sup. Ct. Rep. 722; Ex parte Virginia, 100 U. S. 339, 348, 25 L. Ed. 676, 680; Upshur County v. Rich, 135 U. S. 467, 34 L. Ed. 196, 10 Sup. Ct. Rep. 651; Wallace v. Adams, 204 U. S. 415, 423, 51 L. Ed. 547, 551, 27 Sup. Ct. Rep. 363; Reagan v. Farmers' Loan & T. Co., 154 U. S. 362, 38 L. Ed. 1014, 4 Inters. Com. Rep. 560, 14 Sup. Ct. Rep. 1047; Atlantic Coast Line R. Co. v. Com., 102 Va. 599, 621, 46 S. E. 911; Southern R. Co. v. Com., 107 Va. 771, 772, 60 S. E. 70.

Under the above quoted provisions of the Constitution it becomes the duty of this court to determine the reasonableness and justness of the action of the commission appealed from and fix such rate as this court deems reasonable and just. The action of the commission appealed from shall be regarded as prima facie just, reasonable, and correct. If the evidence, when examined, overcomes this prima facie presumption, the court should reverse or set aside such part of the order of the commission as it deems not correct under the evidence. It then becomes the duty of this court to substitute such order as in its opinion the commission should

have made at the time of entering the order appealed from.

"Where the order is separable and a part is without error, the other part being erroneous, the former part will be affirmed and the latter reversed." St. Louis-San Francisco R. Co. v. Williams et al., 25 Okla. 662, 107 Pac. 428.

It may be said that the Oklahoma Portland Cement Company did not file a cross-appeal in this proceeding, therefore, this court can only make such change in the order appealed from as asked for by the appellant. In other words, the appellant has everything to gain and nothing to lose by the appeal. This view is not supported by the Constitution. The Constitution requires that this court determine the reasonableness and justness of the order made or rate fixed by the commission; if it is not just and reasonable as viewed by this court, then this court shall substitute the order or rate it considers just and reasonable. When an appeal is taken from an act of the Corporation Commission it is not necessary to file a motion for a new trial, neither is it necessary to file a petition in error in this court.

Section 22 of the Constitution, supra, provides that the chairman of the commission shall certify to the Supreme Court all facts on which the action appealed from was based, together with such of the evidence introduced. before, or considered by, the commission as may be selected, specified, and required to be certified by any party in interest, as well as such other evidence, so introduced, or considered as the commission may deem proper to certify. If it is unnecessary for the appellant to file a motion for a new trial or petition in error in order to appeal from an order made or rate fixed by the Corporation Commission, why should a greater burden be imposed upon the appellee and he be required to file a cross-appeal or cross-petition in error? He has the same right or authority to have any part of the record or evidence certified up that the appellant has. When the case comes before this court it is a trial by this court de novo upon the record and evidence introduced before the Corporation Commission. It can only perform its duty under the Constitution by considering it de novo, without any limitations on its power to fix the rate, regardless of whether it be a higher or lower rate than that fixed by the commission.

"It was the undoubted intention of the Constitution framers of Virginia, as well as those of Oklahoma, to doubly safeguard, not only the property rights of transportation and transmission companies, but also the rights of the public and the state. Section 20, art. 9 (Bunn's Ed. para 231), Const., provides that not only may an appeal be taken from an order of the commission by the corporation whose rates, charges, classifications of traffic, schedule, facilities, conveniences, or service are affected, but also by any person deeming himself aggrieved by such action, or, if allowed by act of the Legislature, by the state; it being clearly contemplated that, if it did not prove adequate in permitting any aggrieved party to appeal therefrom, the Legislature should extend the right to the state to intervene and appeal from such order. In reviewing the order appealed from on the record upon which it was considered, it is contemplated that in its legislative capacity this court would consider the matter de novo, except that the findings of the commission from which the appeal was taken should be regarded as prima facie correct, and that the order or legislative act made by the commission on such finding should also be presumed to be just and reasonable. It presupposes that the commission will have a hearing, that it will hear and weigh carefully the testimony introduced on the part of the citizen petitioning for relief, and at the same time will carefully hear and consider the testimony presented on the part of the transportation or transmission company against whom the complaint is made. It is further presumed that the commissioners shall be specially skilled in their line of work, and that they shall carefully and specially study the relation of transportation and transmission companies to the public, and the regulation, operation, maintenance, and control of the same, with a view, not only of reasonably protecting them in their investments in the state, but that they may also be required to give reasonable service, conveniences, facilities, and accommodations to the public without discrimination for a reasonable and just compensation. This is the presumption unquestionably that moved the Constitution makers to declare the rule that the order appealed from should be regarded as prima facie just, reasonable, and correct." Atchison, T. & S. F. Ry. Co. v. State, 23 Okla. 510, 101 Pac. 262; Atchison, T. & S. F. Ry. Co. v. Love, 23 Okla. 192, 99 Pac. 1081; St. Louis & San Francisco R. Co. v. Newell, 25 Okla. 502, 106 Pac. 818.

We think the prima facie correctness of the order appealed from is overcome by the evidence, and it is hereby reversed in part. The last two paragraphs of the order made by the commission are set aside and the substituted order shall read as follows:

"The commission further finds that the rate of 16.875 cents per ton for the transportation of the crushed rock and shale from the quarry to the mill of complainant, is reasonable, and that said rate will earn a fair and just return upon the amount of the investment in the equipment and road bed used in rendering said service. It finds that the present rate is excessive, unreasonable, and earns for said railway line an amount upon the investment which is excessive and out of proportion to the service rendered.

"It is therefore by the Corporation Commission considered and ordered that the defendant, St. Louis & San Francisco Railroad Company, a corporation, make and charge for the service rendered the Oklahoma Portland Cement Company in the transportation of crushed stone and shale from its quarry at Lawrence to said company's mill at Ada, when loaded in cars furnished by the railroad company, the sum of 16.875 cents per ton and no more, minimum carload to be marked capacity of car."

The sixth assignment of error is that the Corporation Commission is without jurisdiction or authority to render and promulgate the order. We have examined the record, and it fails to show a lack of jurisdiction.

In view of the decision of this court it is not necessary to consider the last assignment of error.

That part of the order of the Corporation Commission which holds that the service heretofore and now being rendered by the defendant, railroad company, is in the nature of a switching service and that the railroad company is not entitled to a rate as applied to a road haul rate applicable throughout the state, is affirmed.

All the Justices concur, except KANE, J., not sitting.