## ST. LOUIS & SAN FRANCISCO RY. CO. v. STATE et al.

No. 14508—Opinion Filed June 23, 1925.

Rehearing Denied Jan. 19, 1926.

**1. Corporation Commission—Jurisdiction—Rates—Judicial Power.**

By virtue of Const., art. 9, sec. 19, and Comp. Stat. 1921, sec. 3470, the Corporation Commission is vested with judicial power within the limits of its lawful jurisdiction, and where a claim for refund of alleged illegal charges collected in excess of the legal effective rate, by reason of applying the wrong rate, is made before it against a transportation company, its jurisdiction and power to determine whether a different rate than that charged for the particular service was the legal rate effective and applicable at the time of the service is judicial and not legislative, as it does not involve the establishment of a new rate nor the lowering of a prior established rate, but is a determination as to which of two effective rates was applicable.

**2. Same—Federal Legislation—Transportation Act of 1920—Effect on State Jurisdiction.**

The Act of Congress of February 28, 1920, known as Transportation Act, 1920, created a "guaranty period" of six months from February 29th during which time the states were prohibited, by Commission orders or other legislative methods from changing or affecting any "rates, fares and charges," "classifications, regulations and practices," or determining "the value of the service rendered" by any carrier subject to the Interstate Commerce Act except with the approval of the Interstate Commerce Commission. But this prohibition did not preclude the exercise of judicial power by the state in determining which of two effective rates was applicable during the "guaranty period" for a particular service within the state.

**3. Same.**

Order No. 28 of the Director General of Railroads, and the amendment thereto, was not an order establishing rates, but was authority to the railroad system under federal control to increase rates then "in effect", and to establish new specific rates, in con-

formity with such order. A rate for a particular service then "in effect," for which no special rate was "specifically provided," took a 25 per cent. increase. Therefore, a determination by the Corporation Commission that a particular service in question took this 25 per cent. increase under Order No. 28 instead of a 200 per cent. increase under a new and different classification and practice not specifically authorized by said order, is a judicial and not a legislative act, does not reduce any effective "rates, fares and charges," nor change any "classification, regulation or practice" legally in force, and is not in conflict with section 208 (a), Transportation Act. 1920.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Appeal from order of Corporation Commission.

This is an appeal from the Corporation Commission, to have reviewed in this court the proceedings leading up to the promulgation of Order No. 2148, and to have such order vacated. Order sustained, and cause remanded for further proceedings.

This proceeding was commenced February 20, 1922, by the Oklahoma Portland Cement Company filing with the Corporation Commission its complaint against the St. Louis & San Francisco Railway Company wherein it was alleged in substance that from March 1, 1920, the railway company unlawfully charged the plaintiff a rate of 30 cents per ton for hauling crushed limestone and shale from its quarry five and a half miles south of Ada to its plant in Ada, and that the lawful rate for such service during such period ras 12½ cents per ton up to September 14, 1920, and prayed for a refund of such illegal charges in the sum of $29,632.96. It was further alleged that from September 14. 1920, to November 30, 1920, inclusive, said defendant hauled crushed limestone and shale from plaintiff's said quarry to its plant in Ada for which it charged an illegal rate of 40½ cents per ton when the legal rate for such service during said period was 16.875 cents per ton, and plaintiff prayed for a refund of such illegal and excessive charges for said services in the sum of $13,913.60. The total refund asked in the complaint for alleged illegal and excessive charges during the two periods mentioned amounted to the sum of $43,546.56.

Defendant filed its answer to plaintiff's complaint, wherein it denied each and every allegation therein contained. For a special answer it alleged that the Corporation Commission was without jurisdiction to hear and determine this cause. Further answering, defendant alleged that the rates and charges made and collected by it for the service mentioned were lawfully established and promulgated tariff rates for such service, and that the same were in full force and effect on February 29, 1920, and that by reason of the provisions of sec. 208 (a), Transportation Act, 1920, said rate and charge of 30 cents per ton continued in full force and effect up to September 10, 1920, when the same was increased by Order No. 1781 of the Corporation Commission 35 per cent., making the lawful rate thereafter for such service 40½ cents per ton, and denied that any of the rates or charges made and collected by it from plaintiff were illegal or excessive, and prayed that it be discharged with its costs.

After a hearing which was several times adjourned and resumed by the Corporation Commission, the hearing was finally concluded. and on January 8, 1923, the Corporation Commission entered its Order No. 2148, wherein it was found and determined that the rate in effect and legally enforceable for the service in question on February 29, 1920, was 12½ cents per ton, and that this rate continued in effect until September 10, 1920, when the increase of 35 per cent. authorized by Order No. 1781 became effective, and that thereafter until November 30, 1920, the legal and effective rate for such service was 16.875 cents per ton. It awarded to plaintiff a refund from March 1, 1920, to September 10, 1920, of $24;641.35. with interest at 6 per cent. per annum from July 1, 1920, making a total of $28,337.55 for the service up to September 10. For the service from September 10 to November 30, 1920, plaintiff was awarded a refund in the sum of $15,058.19 with interest at the rate of 6 per cent. per annum from November 1, 1920, making a total for this period of $17 - 015.71, or a total refund, including interest, for the two periods of $45,353.26.

Notice of appeal was duly filed and the appeal thereafter perfected by defendant filing in this court its petition in error with certified transcript of the records of the proceedings had before the Corporation Commission. The Oklahoma Portland Cement Company will be hereafter referred to as plaintiff, the St. Louis & San Francisco Railway Company as defendant, and the Corporation Commission by its official designation.

W. F. Evans and Stuart, Sharp & Cruce (R. A. Kleinschmidt, of counsel), for appellants.

A. Carey Hough and Geo. A. Henshaw, for appellees.

Opinion by LOGSDON, C. Defendant has embraced its ten assignments of error within four propositions in its brief. Its first and second propositions are presented and argued together, and will be so considered here. These are:

"First, that the Corporation Commission was without jurisdiction or authority to enter Order No. 2148, and the same is contrary to law; second the Corporation Commission erred in holding that the transportation of crushed rock and shale from Lawrence, Okla., to Ada, Okla., was a switching service, and in refusing to apply the uniform tariff rates for transportation service thereto."

The gist of defendant's argument under the first proposition is that the jurisdiction of the Corporation Commission in this proceeding was judicial under Comp. Stat. 1921, sec. 3470, and that it could not in this judicial proceeding also act in a legislative capacity by determining and fixing the rate which should apply to the service in question. It is considered that this contention misconceives and misconstrues the action of the Corporation Commission. This court, in the case of St. Louis & S. F. R. Co. v. State et al. 81 Okla. 298, 198 Pac. 73, determined as a matter of fact and of law that the service involved in that case, which was the same service here involved, was a switching service. That decision was and is binding upon the Corporation Commission. It is conceded that the rate applied by defendant, and the compensation received by it, for the service here involved was the uniform tariff rate for line or road haul. Obviously the tariff rate for line or road haul could not be the proper or legal rate to be applied to switching services, if a separate rate had been established therefor. Rates which had been established and promulgated during federal control of the railroads, and which were in force February 29, 1920, were by Act of Congress of February 28 1920, known as the Transportation Act, continued in force, without authority to the states to change them, until September 1, 1920. Therefore, it is clear that in this case the Corporation Commission was not establishing a lower rate or lowering a prior established rate in its legislative capacity, but was merely determining whether a prior established legal rate existed for this particular service in order to conclude and determine the amount of refund due, if any. This was purely a judicial question, and clearly within the jurisdiction and power of the Corporation Commission under the provisions of Comp. Stat. 1921. sec. 3470, which reads:

"The Corporation Commission is hereby vested with the power of a court of record

to determine: First, the amount of refund due in all cases where any public service corporation, person, or firm, as defined by the Constitution, charges an amount for any service rendered by such public service corporation, person, or firm, in excess of the lawful rate in force at the time such charge was made or may thereafter be declared to be the legal rate which should have been applied to the service rendered; and, second, to whom the overcharge should be paid."

This conclusion on the first proposition likewise disposes of defendant's second proposition upon the authority of St. Louis & S. F. R. Co. v. State et al., supra, wherein this court, in the second paragraph of the syllabus, stated:

"Where a railroad company has transported crushed rock and shale from the quarry belonging to a cement company to its cement plant for a period of approximately ten years and handled it as a switching service the fact that the railroad company attaches a caboose to the string of cars or puts a road engine on to perform this service or puts on a full train crew such as would be used in the regular road service and issues regular bills of lading for each car of rock or shale so transported, does not change the service from a switching service to a road haul."

Defendant's third proposition reads:

"The Corporation Commission was without jurisdiction or authority to reduce rates for the period from March 1, 1920, to August 31, 1920, inclusive, or to order refund of charges collected during that period, and the order of the Commission in so requiring is contrary to and in conflict with the Act of Congress of February 28, 1920, known as 'The Transportation Act, 1920'."

As it has been determined under the first proposition that the Corporation Commission had jurisdiction in the instant case because the question presented for its determination was a judicial and not a legislative one, it only remains to determine under this third proposition whether its Order No. 2148 is in conflict with the Act of Congress of February 28, 1920, known as the Transportation Act. In order to reach a correct conclusion on this question it is necessary to determine from the evidence whether on February 29, 1920, there was an established legal rate effective applicable to the character of service here shown other than the line or road haul uniform rate charged by defendant in this case. If there was, and if that rate was the one applied by the Corporation Commission, then its Order No. 2148 is not in conflict with the Act of Congress of February 28, 1920.

At the advent of statehood defendant was performing this service between the quarry

116—4

and the plant of plaintiff under a written contract between the parties entered into in 1906 for a rate of 10 cents per ton or $5 per car. It being recognized that after statehood only tariff rates were legal and that the contract between the parties was abrogated in so far as it attempted to fix a contract rate for this service, defendant prepared and filed its tariff No. 3165, effective March 1, 1917. This tariff fixed the same rate for this service as that named in the old contract between the parties. This was the legal rate for this service on December 28, 1917, when federal control of the railroads commenced. As indicating the nature and character of this service in contemplation of the parties it may be observed that in the original contract it was stated that the quarry would be located "near the mile post 554 of the railroad company", and the railroad company agreed to haul the limestone and shale "from said quarry to Ada." No station to station, or road haul, is mentioned. In tariff No. 3165, effective March 1, 1917, the haul is designated as being "from Oklahoma Portland Cement Company's quarry (about 5½ miles south of Ada, Oklahoma) to Ada, Oklahoma." Still after a lapse of 10 years, there is no mention of a station to station, or road haul.

Effective June 25, 1918, the Director General of Railroads issued his Order No. 28, which, among others, contains this provision:

"That the minimum charge for carload shipments shall be $15 per car. Does not apply to charges for switching service."

This order also provided for a general increase of all rates not specifically provided for therein, of 25 per cent. This was not an order establishing rates, but was authority to the agents of the various railway systems under federal control to file and publish new tariffs in specific instances and to increase other rates then "in effect" in conformity with that order. Atlantic Coast Line Ry. Co. v. Railroad Commission of Georgia, 281 Fed. 321; Coma v. St. Louis & S. F. R. Co. et al., 74 I. C. C. 400. Order No. 28 was thereafter amended so as to specifically authorize an increase of 1 cent per 100 pounds on "a line haul of a carload shipment" of stone, broken, crushed or ground. This increase was authorized to be "added to the published rate in effect." Thereafter a supplemental tariff was filed and published by defendant, effective September 22, 1919 and known as Frisco Tariff No. 3165-A. This tariff applied the special 1 cent per 100 pounds increase authorized for line haul shipments of stone, broken, crushed or

ground, to the hauling of this limestone and shale from the quarry to the Ada plant. For the first time in the more than 12 years of this service Lawrence, Okla., instead of the quarry, is designated as the originating point of the service.

It was doubtless a fortuitous coincidence that the station of Lawrence should have been located in juxtaposition to mile post 554 and to plaintiff's quarry, but it is evident that this was thought to justify the application of a 200 per cent. increase over the rate previously in force for this service, rather than the moderate increase of 25 per cent. authorized for all service not specifically provided for and which the Interstate Commerce Commission had held to apply to switching service. Thereafter the service continued the same, under the evidence contained in the record. Plaintiff continued to use its own switch engine at the quarry in making up and placing the rock trains ready to be picked ed up by defendant's engine and moved to the plant at Ada.

Order No. 28, being merely an administrative authorization to file and publish new rates in specific instances, to increase other rates then "in effect" in conformity therewith, and not being an order establishing rates, it seems clear that the new rates thereafter filed and published in specific instances, and the increases applied, under that authority must be in conformity therewith in order to be legal rates. At the effective date of Order No. 28, and the amendment thereto authorizing 1 cent per 100 pounds to be "added to the published rate in effect" on "a line haul of a carload shipment" of stone, broken, crushed, or ground, there was no published line haul rate in effect for the service involved. Frisco Tariff No. 3165 was then in effect fixing the rate for this service, and it was therein designated as a quarry to plant service and not as a line haul shipping service. Therefore the changing of the designation or classification of this service by Frisco Tariff No. 3165-A from a quarry to plant service to a station to station line haul shipment in order to make applicable the 1 cent per 100 pounds increase was unauthorized by Order No. 28 or by its amendment. Being unauthorized it cannot be considered legal or as being the rate in effect February 29, 1920. The general increase of 25 per cent. was authorized because this particular service was not "specifically provided" for in that order.

But it is urged that the effectiveness of this rate on February 29, 1920, cannot be questioned under sec. 208(a), Transporta-

tion Act, 1920, because the head of the rate division of the Railroad Administration on June 25, 1919, expressly refused to lower the rate on line haul shipments of stone from Lawrence and Lantry to Ada Okla. It must be borne in mind, however, and it is expressly so stated in said refusal, that a reduction in said rate at that time would have applied to line haul shipments of stone, broken, crushed, or ground, throughout the country. The error of this contention lies in the false premise that defendant was authorized by Order No. 28 to change the designation or classification of this service from a quarry to plant service to a station to station line haul shipment, and to apply the 1 cent per 100 pounds increase thereto instead of applying the 25 per cent. increase to the rate then "in effect" for this service.

It is therefore concluded that the Corporation Commission was acting judicially and within the limits of its jurisdiction when it determined that the legal rate in effect for this service on February 29, 1920 was the rate established by Frisco Tariff No. 3165, plus 25 per cent., as authorized by Order No. 28 for all rates not "specifically provided." This was the legal and effective rate which should have been charged for this service from February 29, 1920, to September 10, 1920. On the latter date an increase of 35 per cent. became effective as to all intrastate rates by order of the Corporation Commission in conformity with a similar order of the Interstate Commerce Commission. The reasonableness and justness of this rate thus established was determined by this court in St. Louis & S. F. R. Co. v. State et al., supra, and that decision is here not seriously questioned upon that point.

As to the rate found by the Corporation Commission to have been legal and effective from February 29, 1920 to September 10, 1920, it may be observed that so far as is disclosed by the evidence preserved in the record no application was ever made to the Corporation Commission between the advent of statehood in 1907, and the promulgation of Frisco Tariff No. 3165, effective March 1, 1917, for an increase of rates for this service. This raises a strong presumption that the rate of 10 cents per ton was not wholly unremunerative for this service when considered in connection with the finished product haul provided for in the old contract. Therefore the increase of 25 per cent. on this rate, authorized by Order No. 28, must have been deemed by the Railroad Administration reasonably sufficient to cover the increased cost of the service under federal control, be-

cause no special rate therefor was "specifically provided."

The fourth proposition relied on in defendant's brief is a restatement of the matters complained of under the first, second, and third propositions, though worded differently. A discussion of this proposition would involve merely a substantive iteration, which is not deemed necessary. No new question of fact or different legal principle is presented meriting further and additional consideration.

No error is apparent either in the assumption of jurisdiction or in the proceedings of the Corporation Commission leading up to the promulgation of Order No. 2148, here complained of. The order of the Corporation Commission should be sustained and this cause should be remanded for such further proceedings as may be necessary in enforcing said Order No. 2148.

By the Court: It is so ordered.

Note—See under (1) 12 C. J. p. 85, § 1113 (1926 Anno). (2) 12 C. J. p. 85, § 1113 (1926 Anno). (3) 12 C. J. p. 85, § 1113 (1926 Anno).