**DOLESE BROS. CO. v. ST. LOUIS-S. F. RY. CO.**

No. 26768.    Jan. 24, 1939.

Hayes, Richardson, Shartel, Gilliland & Jordan and J. K. Moore, for plaintiff in error.

J. W. Jamison, Cruce, Satterfield & Grigsby, and W. T. Stratton, for defendants in error.

RILEY, J. This is an appeal from an order of the Corporation Commission dismissing the complaint of plaintiff in error wherein they claim that by the location of a switch or sidetrack on the St. Louis & S. F. Railway Company's line about 4.25 miles east of the town of Sulphur, serving the Makins Sand & Gravel Company, a shipper of sand, gravel, and like material used largely in building and highway construction industries, and failure to list said sidetrack in its general mileage table as a shipping point, and treating said siding as within the switching limits of the town of Sulphur, and by application of single or joint line rates on shipments of sand and gravel from Makins' plant based on distance from Sulphur, and that the Frisco and Santa Fe Railroad companies, by assessing single line rates based on distance from Sulphur for transportation of sand and gravel moving from the Makins plant to points on the Santa Fe north of Purcell, worked an unjust and unfair discrimination against complainant. The complaint in effect charges that the failure of the Frisco Company to list said siding as a separate shipping point is and has been in direct violation of the laws of the state of Oklahoma, and lawful

general orders of the Corporation Commission.

It appears that complainant is a corporation engaged in the preparation and sale of crushed stone, sand, and gravel used in the construction of roads, buildings, etc. It operates a stone crushing plant at a spur or siding on the Santa Fe about 12.2 miles south of Davis, Okla., junction point on the Santa Fe. The Frisco maintains a branch line running 8.8 miles west from Scullin, on its main line, west to Sulphur. The Santa Fe maintains a branch line running 9.4 miles east from Davis on its main line to Sulphur. There is no physical connection between the two lines at Sulphur so that freight tendered to and accepted by the Frisco at Sulphur for shipment to points on the Santa Fe north of Purcell and south of Oklahoma City must move east from Sulphur to Scullin and north via Frisco to Ada, and thence west and north on the Santa Fe. The Frisco may accept such shipment at single line rates based upon mileage from Sulphur west and north over the Santa Fe, subject to the right of the Santa Fe to refuse to handle the shipment at such rate, in which case Frisco may accept such shipment at joint line rates, provided it obtains from the shipper written consent thereto. In case it fails to require such written consent, if it accepts such shipment, it must protect the lower or shortest line haul rate. The practice of the Santa Fe in accepting shipment of sand, gravel, etc., from the Frisco destined for points on its line north of Purcell, as of from Sulphur, at rates based upon mileage west from and north from Sulphur, the shortest line haul, resulted in the Makins Company being granted a rate of lower than Dolese Bros. Company was charged by about six cents per ton to two points on the Santa Fe main line north of Purcell, viz., Noble and Britton, and to some seven other points on branch lines of the Santa Fe the same difference in rates applied.

Complainant asserted that such practice was a violation of the laws of the state and prayed for an order commanding the railroad companies to cease and desist from such practices, and in the future to publish mileage to be applied from the sidetrack upon which Makins' plant is located in the S. W. Lines Mileage Table.

The commission, after hearing, denied the application, and Dolese Brothers Company appeals.

The Frisco Company presents its separate motion to dismiss the appeal upon the grounds:

(1) That the order complained of is not an appealable order; and

(2) The state is a necessary party appellee.

In support of said motion the cases of Atchison, T. & S. F. Ry. Co. v. State, 28 Okla. 797, 115 P. 872; Atchison, T. & S. F. Ry. Co. v. State, 40 Okla. 411, 138 P. 1026, and kindred cases, are cited.

In Atchison, T. & S. F. Ry. Co. v. State, 28 Okla. 797, 115 P. 872, it was held that under section 20, art. 9, of the Constitution, an appeal may be taken by any corporation whose rates, charges, or classification of traffic, schedule facilities, conveniences or service are affected by any order of the Corporation Commission, and confers appellate jurisdiction upon the Supreme Court in all actions before the Corporation Commission wherein it is sought to regulate the management and operation of transportation companies within the state in the interest of persons who use such companies for the transportation of themselves or their property, but does not apply to actions for the correction of abuses disconnected from such services.

Substantially the same question was involved in Atchison, T. & S. F. Ry. Co. v. State ex rel., 40 Okla. 411, 138 P. 1026.

The order sought by the complainant in this case is one which if granted would affect rates, charges, etc., directly connected with transportation services rendered and to be rendered by the railroad companies respecting an industry in which complainant is engaged, and directly affecting rates on commodities produced and shipped by complainant. Had the order been granted, the the right of the railroad company affected to an appeal could not with reason be questioned. It follows that an appeal lies from an order denying a correction of the alleged abuse.

The motion to dismiss the appeal must be, and is, denied.

August 14, 1912, the Corporation Commission, in cause No. 1617, then pending before the commission, entered what is termed Order No. 616. Theretofore each carrier had issued its individual mileage or distance tables, resulting in great confusion in determining proper freight charges when shipments moved over lines of two or more carriers.

In the order it is stated that in the other states joint distance tables were published. The commission then found that such a table should be issued in Oklahoma. It is

then said that at the hearing all the carriers evidenced a desire to issue a mileage table. The order then reads:

"If an order issues, it must be specific in its terms. The commission will not at present time issue an order, but will give the carriers until the 15th day of September to submit to the commission proof copy of a joint distance or mileage table in accordance with the outline given below."

The material parts of the outline given are:

"In the issuance of a mileage table * * * such rules, regulations and examples necessary for the proper handling of a mileage table should first appear in the book to be followed by an alphabetical index of every station, sidetrack and junction point. This should be followed by the mileage table proper which should, in so far as possible, show the railroads in alphabetical order and under each railroad there should appear upon the left and right-hand side of a double page or upon the left-hand side of a single page in geographical order every station, sidetrack, junction point, and terminal of said carrier's lines, and at the top of the page show junction point, state line point and terminal, together with the principal cities and towns in Oklahoma. The table should be so arranged that a line drawn from top to bottom under the junction or terminal would show the distance between such points. Only the distance between stations upon a carrier's line where there is a possible haul in Oklahoma should be shown in this portion of the table."

Other detail matters are stated, and finally the so-called order reads:

"If the above suggestions are carried out, this case will be dismissed."

It is said that a joint mileage table was thereafter prepared. How closely it followed the suggestions made does not appear.

The principal question involved in this appeal is whether said order is mandatory, having the force and effect of law so as to require a joint mileage table to be issued indexing in alphabetical order "every station, sidetrack and junction point" in the book, followed by a mileage table properly showing the railroads in alphabetical order, and as to each railroad showing in geographical order every station, sidetrack, junction point, and terminal, etc. If so, it can hardly be denied that the law required the Frisco Railroad to list and show the sidetrack, approximately 4.25 miles east of Sulphur, at which the Makins plant was and is located. On the other hand, if it may be said that the order is not mandatory and all inclusive, and leaves room for managerial discretion as to whether a sidetrack may be treated as within the switching limits of an adjacent or nearby town or station, then the Frisco was within its rights in treating the sidetrack within the switching limits of the town or station of Sulphur.

The Corporation Commission in its order in this case apparently construed Order 616, supra, as allowing the railroad companies some managerial discretion. In its order the commission once refers to "Managerial Orders" of the railroad in the extension of switching limits, and says:

"The commission further finds that the evidence in this case does not show that there has been abuse of managerial discretion by the officials of the Frisco railroad in extending to the Sulphur locality, including the particular track here in issue, the competitive rate applicable by the line of the Santa Fe from Sulphur."

In Concho Sand & Gravel Co. v. St. L. & S. F. Ry. Co., 26 Annual Rep. of Corporation Commission, p. 782, the commission, among other things, said:

"In Order No. 616, cause 1617, dated August 14, 1912, requiring the publication of distances between all stations in the state, the commission said that all stations and sidings should be published."

There rates on road material from West Cleo, on the Santa Fe, to an unpublished siding known as Cochran or Cochran Spur, located on the Chicago, R. I. & P. about 1.7 miles east of Clinton, were involved. The Rock Island had located the Cochran siding, but had not included it in the joint mileage table. The Rock Island treated the Cochran siding as being without the switching limits of Clinton. Effective May 10, 1933, the railroads published Southwestern Lines Mileage Table 1-G, which superseded and canceled the original Table 1-F, filed as suggested in Order No. 616, supra. This table had a rule, apparently promulgated by the carriers, which in part reads: "To determine the distance to or from an Oklahoma station not shown herein, which is situated between two stations that are shown, use the distance to or from the next more distant station on the same carrier". This table shows a station, Indianapolis, on the Rock Island 8.6 miles east of Clinton. The rate charged on the shipments of sand then involved was based upon this additional mileage of about 6.3 miles. Rates on sand, etc., were figured in ten-mile zones. Indianapolis is in the next more distant ten-mile zone from both Clinton and Cochran siding, thereby, and apparently within the rule stated in Mileage Table 1-G, supra, the Rock Island charged a higher rate than would have been applicable to either Clinton or

Cochran. Upon complaint of a shipper the Corporation Commission found and held:

"* * * That of all the shipments originating at West Cleo, involved herein, were intended for and in reality shipped to Cochran, Okla., and that the reconsigning of said cars from Clinton, Okla., to Indianapolis, Okla., was but a device in the through movement of said traffic; the commission further finds that the defendant, the Rock Island Railroad, upon arranging for Cochran to become a .regular station, for the unloading of freight traffic, should have provided for the publication of the mileages to that point in its lawfully filed tariff and that its failure to so provide resulted in the assessing and collecting of unjust, unreasonable, and unlawful charges upon the traffic here involved."

The rate in question was ordered adjusted accordingly. But no order was entered requiring the Chicago, R. I. & P. Ry. Company to list and publish Cochran as a separate station in the mileage table. It was intimated that the Chicago, R. I. & P. could have included Cochran Spur within the switching limits of Clinton and thereby given the shipper the benefit of the lower or Clinton rate.

. A somewhat similar situation arose in the case of J. Lee and E. A. Bilbig v. St. L. & S. F. Ry. Co., and Chicago, R. I. & P. Ry. Co., case No. 11390, Order No. 6460, 27th Corporation Commission Annual Report. Therein was involved rates chargeable on shipments of gravel from Granite, Okla., to Clinton and Neptune Spur, Okla., via St. Louis & S. F. and Chicago, R. I & P. The shipments were apparently moved from Granite, Okla., to Hobart, over the Rock Island, and from Hobart over the Frisco to Neptune Spur, an unpublished sidetrack on the Frisco located about 2.6 miles south of Clinton, a total distance of 50.6 miles. The shortest available route from Granite to Clinton was via Rock Island to Lone Wolf thence via Santa Fe to Clinton, 47.8 miles. But adding the distance of 2.6 miles south from Clinton over the Frisco, then via Rock Island, Santa Fe, and Frisco, the total distance over that route from Granite to Neptune Spur is 50.4 miles. Complainant in that case sought an order including Neptune Spur within the switching limits of Clinton which would have given a rate of 89 cents per ton instead of 95 cents .

The commission denied the relief apparently upon the ground that the actual distance the material shipped must be hauled is substantially the same over both routes. Again no order was made requiring the Frisco to publish the Neptune Spur in its mileage table. Managerial discretion was in substance upheld.

All that is held in either of the cases is that a carrier may not leave a sidetrack or spur to which freight is actually hauled and delivered out of its mileage table, and charge freight rates based on mileage to the next farther station. The right of a railroad to treat a sidetrack or spur within the switching limits of a nearby town or station has been recognized by the Interstate Commerce Commission. Bancroft v. P. & R. Ry. Co., 91 I. C. C. 186; New Bedford Board of Commerce v. Director General et al., 55 I. C. C. 320.

In St. L. & S. F. Ry. Co. v. State et al., 81 Okla. 298, 198 P. 73, it is in effect held that it is within the right of a railroad company to treat a switch or sidetrack located five or six miles from a station within the switching limits of such station, and where it has done so for a number of years, it will be required to continue to do so, and could not thereafter change such switching service to a line haul in order to enable it to charge a higher rate for the service.

We conclude that Order No. 616, supra, is not in terms a mandatory order, and does not by its terms require the publication of all stations, sidetracks, etc., in a mileage table. It is permissive only and is suggestive as to what it should contain; that it had never been treated as a mandatory order; that so-called "managerial discretion" in such matters has been recognized. Furthermore it appears clearly that whatever differences in freight charges there are as against complainant and the Makins Company are brought about by a system of a change in freight rates by ten-mile zones. Wherever a station falls within the same ten-mile zone measured from Sulphur and Crusher, respectively, the rates to the companies are the same, where a station falls within a different ten-mile zone a difference in the rate follows. This same condition doubtless arises in many instances, thus giving one locality a slight advantage over another.

The commission in effect held that it was within the managerial discretion of the Frisco Railway Company to treat the siding in question within the switching limits of Sulphur, and that there was no abuse of such discretion.

In this we agree, and the order of the commission is affirmed.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN, CORN, GIBSON, HURST, DAVISON, and DANNER, JJ., concur.