Virginia Citizens Consumer Council,                    Appellant,

against    Record No. 931503
           S.C.C. Case No. PUC920029

Chesapeake and Potomac Telephone
Company of Virginia, et al.,                           Appellees.

MCI Telecommunications Corporation,                    Appellant,

against    Record No. 931525
           S.C.C. Case No. PUC920029

Chesapeake and Potomac Telephone
Company of Virginia, et al.,                           Appellees.

Commonwealth of Virginia, *ex rel.*
Division of Consumer Council, Office
of the Attorney General,                               Appellant,

against    Record No. 931526
           S.C.C. Case No. PUC920029

Chesapeake and Potomac Telephone
Company of Virginia, et al.,                           Appellees.

AT&T Communications of Virginia, Inc.,                 Appellant,

against    Record No. 931527
           S.C.C. Case No. PUC920029

Chesapeake and Potomac Telephone
Company of Virginia, et al.,                           Appellees.

Upon consideration of the record, briefs, and argument of counsel, the Court is of opinion that the motion to dismiss filed by the State Corporation Commission should be granted.

This Court considers appeals from only final orders of the Commission. Va. Const. art. IX, § 4; Code § 12.1-39; Rule 5:21(g). *See Blue Cross of Virginia and Blue Shield of Virginia v. Commonwealth,* 218 Va. 589, 598, 239 S.E.2d 94, 98 (1977). The Commission's June 18, 1993 "Order Extending Experimental Plan" fails to qualify as an appealable, final order under the foregoing authority. The Order merely extended the Commission's evaluation of its Experimental Plan for six months and continued the matter generally pending further orders of the Commission, the Commission noting that it "is only now receiving comments concerning the 1989 Annual Informational Filing" of one of the parties.

Consequently, the appeals are hereby dismissed.

JUSTICE LACY, with whom JUSTICE KEENAN joins, dissenting.

I dissent. An order is final for purposes of this Court's appellate jurisdiction when it disposes of the whole subject matter, gives all the relief contemplated, and leaves nothing to be done by the issuing body except execution of ministerial matters. *Brooks v. Roanoke County San. Auth.,* 201 Va. 934, 936, 114 S.E.2d 758, 760 (1960), and cases cited therein. This case involves appeals from an order the State Corporation Commission entered on June 18, 1993, extending the termination date of an experimental plan for regulating telephone companies from July 1, 1993, to December 31, 1993. The State Corporation Commission, in its motion to dismiss the petitions for appeal, claimed that this order was not final. If the Commission is correct, there must be some substantive issue left unresolved, or some contemplated relief yet to be determined with regard to the experimental plan.

The starting point for determining what remained to be done with regard to the experimental plan after the June 18, 1993, order is to examine the plan itself. In December of 1988, following notice and hearing, the State Corporation Commission adopted an experimental plan for "Alternative Regulation of Virginia Telephone Companies (the plan)." This experimental plan, as its title implies, proposed a method of regulating monopolistic telephone services which differed from the rate base rate of return method of regulation traditionally associated with monopolistic public utility services. Features of the plan included its voluntary nature—no telephone company was required to participate; its limited duration—four years with evaluation of the plan in the fourth year; a rate reduction requirement for those companies choosing to participate; and designation of categories

of services as Actually Competitive, Potentially Competitive, Discretionary, and Basic, with corresponding degrees of regulation for each category. For example, those services in the Actually Competitive category, such as yellow pages advertising, would not be subject to price regulation by the Commission and revenue from those services was not to be included in a company's revenue for the purpose of calculating a company's return on its equity.

At the time the plan was adopted, Code § 56-235.2 required the Commission to utilize a specific methodology when setting public utility rates, generally referred to as rate base rate of return regulation. Rates comply with the requirement that they be just and reasonable only if the procedure set out in that statute was followed. Therefore, a permanent change in the method of setting rates which did not utilize the formula would violate Code § 56-235.2. However, Code § 56-234 provides:

> no provision of law shall be deemed to preclude voluntary rate or rate design tests or experiments, or other experiments involving the use of special rates, where such experiments have been approved by order of the Commission after notice and hearing and a finding that such experiments are necessary in order to acquire information which is or may be in furtherance of the public interest.

This Code section allows the Commission to undertake the type of experimental regulation embodied in the plan without violating § 56-235.2. Nevertheless, to avoid conflict with that section, a major component of the plan was that it was *experimental.*

The plan met the experimental requirement in three important ways. First, it was voluntary; no company was required to participate. Second, plan evaluations were to be issued in the fourth year of the plan. The purpose of the reports, as stated by the plan, was to "provide an informed basis upon which the Commission can design and execute subsequent policy and predicate future action." The third, and most significant factor making the plan experimental in nature was the fact that it was not permanent, but was limited in duration to a period of four years. Without this temporal limitation, even if participation in the plan were voluntary, and even if the reports were to be used as the basis for future action, the plan would not meet the definition of experimental. Rather, it would be a permanent method of setting rates, which did not utilize rate base rate of return regulation, in conflict with the requirements of § 56-235.2. The ending date of the plan, December 31, 1992, was an essential part of the plan as adopted by

final order of the Commission in December, 1988.[1] All five local exchange telephone companies volunteered to participate in the experimental plan.

The order extending the plan under consideration here was issued in a new docket initiated by the Commission in June, 1992. That docket, Case No. PUC920029, was entitled "In the matter of evaluating the Experimental Plan for Alternative Regulation of Virginia Telephone Companies." The only explanation offered by the Commission for the order's lack of finality is that it "did not constitute a final disposition of the Experimental Plan" but "merely extended the plan for an additional six months so that notice and a hearing could occur before a final disposition of the case." This explanation implies that a hearing was required to enable the Commission to obtain information relevant, if not essential, to formulating a decision which would "finally dispose" of the experimental plan.

Based on the Commission's argument, the receipt of these reports and comments on the reports are the matters which were to be considered at the subsequent evidentiary hearing. As counsel for the Commission stated at oral argument, questions which needed resolution included whether more or less pricing freedom should be given to the telephone companies, whether the quality of service had declined or improved under the plan, and whether the basic rates should be altered. Under the terms of the plan, however, the reports evaluating the plan and providing the basis for the answers to these questions would not affect the operation of the experimental plan, but were to serve as the basis for *future* action by the Commission. Subsequent Commission action could, and likely would, resemble the experimental plan in many ways, but the subsequent policy would be a new plan, not the experimental plan. Therefore, the information which the Commission presumably would receive at this hearing could have a prospective impact only and would not alter the terms of the plan.[2] There was nothing that could occur in that hearing that could affect the "final disposition of the plan" because the final disposition of the plan was that it terminated.

[1] There was no contention by the Commission or any other party that the December, 1988 order was not final because there had been no final disposition of the plan.

[2] The order ultimately entered by the Commission in December, 1993, adopted a "modified" plan and ordered that it be in effect until final action was taken in another docket, Case No. PUC930036, established to consider comments on the "modified" plan. In its order, the Commission described the "modified" plan, Attachment A to the order, as "a proposal for a new regulatory alternative for Virginia telephone companies" which was generated "as a result of the extensive record developed in this case." This "modified" plan is a new plan. If it were not a new plan, the Commission's actions could be interpreted as the "subterfuge" alluded to by Commission's counsel in oral argument.

Here the only substantial issue involving the operation of the plan was its termination date. There was no further relief to be granted and the receipt of information and comments regarding the plan by the Commission was no more than a ministerial function for purposes of *this* experimental plan. Evaluation of the plan was an issue in the docket, separate and severable from the termination date of the plan. We have repeatedly held that a final adjudication of a collateral matter which addresses separate and severable interests can be appealed when the appeal cannot affect the determination of the remaining issues in the case, even if the adjudication is reversed. *Leggett v. Caudill,* 247 Va. 130, 134, 439 S.E.2d 350, 352 (1994). In my opinion, there is no legal or practical support in the plan or in the arguments presented by the Commission for the conclusion that the June 18, 1993, order is not a final order as to the experimental plan simply because a hearing is required to accept reports and comments on that plan.

To treat the June 18, 1993, order as an interlocutory order not subject to review, has two additional vices in this case. First, continual extensions of the expiration date of a regulatory scheme allows the Commission to do indirectly what it could not do directly. Immunizing repeated extensions of the expiration deadline from judicial review allows the Commission to change the experimental nature of the plan authorized under Code § 56-234 to a permanent form of regulation inconsistent with the provisions of Code § 56-235.2. At oral argument, counsel for the Commission stated that repeated action by the Commission extending the life of the plan would be an "obvious subterfuge," and, at that point, this Court would have the authority to review the extension order. Counsel could not explain, however, why some subsequent termination order would qualify as a final order, for purposes of our jurisdiction, when the instant order does not.

A second vice resulting from the holding of the majority today is that, contrary to the Commission's assertions in its motion to dismiss, the extension of the experimental plan's term of existence does not merely preserve the status quo. The status quo at the time the June 18, 1993, order was adopted was that the plan would expire on July 1, 1993. In extending the plan, the status quo was changed, adding six months to the life of the plan. That meant six more months of rates collected and services regulated or deregulated under the terms of the experimental plan. This was a substantive change, not a preservation of the status quo.[3]

---

[3] The continued existence of the plan and its categorization of certain services may have farther reaching results in light of the legislation passed by the General Assembly in 1993. That legislation, Code § 56-235.5(F)(iii), authorizes the Commission to adopt regulatory alternatives for telephone companies notwithstanding Code § 56-235.2 and provides that:

A final order is one which disposes of the subject matter of the case and leaves only ministerial actions to be completed. The subject matter of the case here is the experimental plan. But, by its very terms and under the provisions of the statutes under which it was adopted, the disposition of the plan was that it would expire at a certain time. Most assuredly, the reports, evaluations, and comments submitted to the Commission on the operation, advantages, disadvantages of the plan, and suggestions for possible change could and would be used to "design and execute subsequent policy." Just as the December 18, 1988, order creating, defining, and terminating the plan was a final order, the June 18, 1993, order terminating the plan was a final order, since there was nothing left to be done to dispose of the subject matter of the case other than the completion of administrative matters. The final disposition of the plan was that it ended. And the order of June 18, 1993, setting the termination date of the plan on December 31, 1993, left nothing more to be done to end the plan. Therefore, in my opinion the order of the Commission was a final, appealable order and I would deny the Commission's motion to dismiss this appeal.

This order shall be certified to the State Corporation Commission and shall be published in the Virginia Reports.

A Copy,

Teste:

/s/ David B. Beach, Clerk

---

all services classified as actually competitive services· under the provisions of the Experimental Plan adopted by the Commission in Case No. PUC880035 in its final order of December 15, 1988, and remaining so classified as of the effective date of this section, shall be considered to be competitive services.

This legislation was passed at a time when the experimental plan was due to expire at midnight on June 30, 1993. The legislation became effective on July 1, 1993, at which time, as a result of the June 18, 1993, order at issue here, the experimental plan remained in effect with its classification of certain services as actually competitive.